## WHEELING.

### HULL *v.* HULL'S HEIRS, &c.

Submitted January 6, 1885.—Decided April 25, 1885.

(*SNYDER, JUDGE, Absent.)

1. In no suit brought against infants to sell their real estate can a decree be entered by a court. unless a *guardian ad litem* has been appointed for them, and he has filed for them an answer. (p. 23.)

2. If a decree be in such a suit entered by the court, ordering a sale of the lands of infants, before a *guardian ad litem* is appointed for them, and before he files an answer for them, and under such decree the lands of infants be sold, and the sale be confirmed by the court, any one of these infants may within six months, after he attains the age of twenty-one, appear in the suit, whether it be ended or not, and have these decrees reviewed and reversed, and on such a reversal of such decrees for this error the title of the purchaser of the land falls, and the parties must by proper proceedings by the court be put *in statu quo*. (p. 28 )

3. A widow entitled to dower in the real estate of her deceased husband is neither a joint-tenant, tenant in common nor copar-

---

*Counsel below.

†The other decisions announced at this term are reported in Vol. XXV.

cener with the heirs at law within the meaning of the statute concerning partition (Code, ch. 79), so as to authorize a court of equity to sell the legal estate of the heirs descended to them, and to have her dower assigned to her out of the proceeds, and the residue divided among the heirs and those having vendor's liens on the lands, if any one heir refuses to give his assent thereto, or if any one heir be an infant defendant, the widow being the plaintiff in the suit.  (p. 19.)

4. A widow can not bring a suit in chancery to have all the lands of her husband sold, and out of the proceeds of such sale to have the value of her dower paid, and the residue paid to the creditors of her husband, and if any surplus remains, to have it divided among her children the sole heirs of her husband.  Such general creditors' bill she can not bring ; and no suit, which she brings, can by petition or in any other manner be converted into a creditors' bill.  (p. 23.)

GREEN, JUDGE, furnishes the following statement of the case :

In 1868 Elizabeth M. Hull, widow of Felix H. Hull, and Hugh W. Sheffey, administrator of Felix H. Hull, filed their bill in the circuit court of Pocahontas county, West Virginia, setting out that Felix H. Hull died intestate in Highland county, Virginia, in the fall of 1861, leaving as surviving heirs a widow Elizabeth M. Hull and three infant children Edger P, Hull, Felix H. Hull and Lillie Hull.  Letters of administration were granted by the county court of Highland county Virginia, to Hugh W. Sheffey.  He proceeded to administer the personal estate and found the same insufficient to pay the intestate's debts.   He then, the bill states, instituted a suit in the circuit court of Highland county Virginia to compel the creditors to prove their debts, and after exhausting the personal assets to obtain a decree for the sale of the intestate's lands after assignment of dower to the widow.   But the State of West Virginia having been formed out of the State of Virginia, the circuit court of Highland county, which remained in Virginia, could not decree the sale of the intestate's land, lying in Pocahontas county, which was within the bounds of West Virginia, and thus a necessity arose for the institution of this suit to obtain a decree from the circuit court of Pocahontas county in aid of the administration of the estate of the intestate in Highland county, Virginia. Thereupon on September 26, 1867, in said suit the circuit

court of Highland county made a decree upon the petition of
Hugh W. Sheffey, the administrator of Felix W. Hull, with
the concurrence and approval of the widow, Elizabeth M.
Hull, certifying to N. Harrison the judge of the circuit court
of Pocahontas county the following facts:

"That the estate of Felix H. Hull is in due course of ad-
ministration in this court; that the reports of a master com-
missioner showing the amount of the personal assets in the
hands of the administrator to be administered, and the amount
of the indebtedness of the estate are before this court, and
that the indebtedness of the said estate is very largely in
excess of the personal assets, and that the sale of certain lands
belonging to the estate of said Felix H. Hull, and situate in
the county of Pocahontas in West Virginia will be necessary
in aid of the assets within the jurisdiction of this court to dis-
charge the debts of the estate of said Felix H. Hull, deceased;
that this Court respectfully requests the circuit court of Poca-
hontas county in the State of West Virginia, to decree a sale
of the lands belonging to the estate of said Felix H. Hull,
deceased, lying in said county for the purpose aforesaid, and
that the Hon. Hugh W. Sheffey and James Bumgardner, Jr.,
Esq. are authorized to act in that behalf as commissioners of
this Court."

The bill then states that all the lands in Pocahontas county
referred to in this decree, as seized by Felix H. Hull at the
time of his death, were as follows:   First: Four tracts of
land containing in all 3,280 acres of land, which on October
13, 1853, Andrew G. Mathews agreed to convey to Felix H.
Hull, now deceased, for $2,000.00 in cash and $8,000,00 to be
paid in four annual payments of $2,000.00 each, to be paid on
October 1 in each successive year for four years, on the pay-
ment of which a general warranty deed was to be made of
three of these tracts of land, and a special warranty deed for
the fourth containing 260 acres. A copy of this agreement was
filed with the bill. This agreement was not recorded. Second:
A tract of land of 1,180 acres conveyed by Ann M. Mathews
and Mary Ann Mathews to Felix H. Hull in his lifetime on
January 1, 1855, by deed recorded.   The grantors were the
widow and only child of Samuel L. Mathews, who died intes-
tate, and who by a contract made July 4, 1854, had agreed to

convey this land to Felix H. Hull, now deceased. This deed was a general warranty deed and the consideration was $5,313.00. A vendor's lien was reserved on the face of this deed to secure the unpaid purchase-money, all of which, the bill says, was paid except $——, the bill failing to state the amount unpaid. This deed was recorded, and a copy of it was filed with the bill. Third : The lands conveyed by Joseph McClung and Mary J. McClung to Felix H. McClung in his lifetime by deed, dated September 20, 1855. The land so conveyed is thus described in the deed, a copy of which is filed with the bill : " The entire interest of the grantors in the lands formerly owned by Jacob W. Mathews known as the home tract, which embraces several tracts, together with their interest in the lands formerly belonging to said Mathews in said county, excepting several small tracts previously sold to John W. Warrick." The consideration was $833.33⅓ to be paid in cash October 1, 1855, four days after the making of this deed, and $2,500.00 to be paid at a future day, time not named in the deed, and bearing interest from October 1, 1855, and the balance of the purchase-money, $1,666.66⅔, to be paid on October 1 next succeeding the death of the widow of Jacob W. Mathews. This deed was a general warranty deed and retained a vendor's lien for the unpaid purchase-money. The whole purchase-money was $5,000.00. The bill states that there was conveyed by this deed an interest in thirteen different parcels of land, mentioning their size and the interest in each conveyed, which varied from one half to one fourth of these different tracts of land. The bill alleges, that all of the purchase-money for their interest in these different tracts of land has been paid except $1,000.00 with interest from September, 1858, which is coming to Kyle Bright, the personal representative of Joseph McClung, deceased. Fourth. A parcel of land of 200 acres conveyed to Felix H. Hull by Uriah Horner and wife by deed dated May 22, 1856. This deed was recorded, and a copy of it was filed with the bill. It was a general warranty deed and all the purchase-money had been paid when the deed was made. Elizabeth M. Hull, one of the plaintiffs and the widow of Felix H. Hull, the bill alleges, owned an undivided moiety of these thirteen tracts of land, an interest in which was conveyed by Joseph

McClung and wife to her husband; and she states in the bill, that she is willing her moiety of these lands should be sold with the rest of the lands of Felix H. Hull, deceased, the court securing her interest therein. She owned the moiety of these lands as the heir of Jacob W. Mathews deceased.

There was also filed with the bill a copy of another decree in said suit brought by Hugh W. Sheffey, one of the plaintiffs in this suit, as administrator of Felix H. Hull in the circuit court of Highland county Virginia. The portions of the decree, which have any bearing on this case, are as follows:

"And it appearing from the statements in the petition of Hugh W. Sheffey, administrator, that lands of very considerable value belonging to the estate of said Felix H. Hull, deceased, and situated in the county of Pocahontas, in the State of West Virginia, and subject to liens, one for about $2,000.00 held by James H. Renick, of Greenbrier, West Virginia, and another of about $1,000.00 (the exact amount not known) in the hands of William H. McClintic, of Pocahontas county, West Virginia, and that the holders of said liens threaten to attach said lands or set them up to sale to enforce their liens, and that said lands are in danger of being sacrificed by such action, and that the said owners of said liens propose, upon receiving one half of the amount of their said liens, to suspend all proceedings against said lands and to await the convenience of the estate for the payment of the remainder, in consideration whereof, it is adjudged, ordered and decreed that Hugh W. Sheffey, administrator of Felix H. Hull, deceased, be and he is hereby authorized to collect of Robert J. Glendy, of the proceeds of the sale of the Branch farm heretofore ratified and confirmed by this court, an amount equal to one half of said liens owned by said Renick and McClintic, and apply said amount to the payment of said liens on the conditions mentioned in said petition; and the court being satisfied that the sale of a portion of the real estate of said Felix H. Hull will be necessary in aid of the personal assets to discharge the debts of the estate, it is ordered and decreed that Hugh W. Sheffey and James Bumgardner, Jr., be and they are hereby authorized to act as commissioners of this court for the purpose of affecting a sale of said lands in Poca-

hontas county, West Virginia, and they are directed to take such steps as are necessary to obtain a decree from the circuit court of Pocahontas county, West Virginia; and in order to facilitate the sale of said lands, it is further adjudged, ordered and decreed that Eelizabeth M. Hull, widow of Felix H. Hull, deceased, if she is advised to do so, may relinquish her dower in the said lands lying in Pocahontas county, West Virginia, in case they be sold, and receive compensation therefor in the lands of the estate lying in Highland county, Virginia."

This is all that appears in the record in reference to this suit.

The bill then alleges that the plaintiff, Hugh W. Sheffey, administrator of Felix H. Hull, in Virginia, has paid to J. H. Renick under this decree on the balance of the purchase-money due for the purchase of the lands aforesaid from A. G. Mathews the sum of $————, (amount not stated), and to William H. McClintic for Ann Mathews the sum of $————, (amount not stated). So the averments aforesaid state correctly the balance due on the liens aforesaid. This bill further states that one of the plaintiffs in this cause, Elizabeth M. Hull, " has elected to take in money the value of her dower in the lands aforesaid to be invested according to the terms and conditions of the decretal order last aforesaid." The bill then states, that Felix H. Hull in his lifetime sold to Benjamin F. Jackson, his one half of two of these thirteen tracts of land, an interest in which was conveyed to him as aforesaid by Joseph McClintic and wife; and perhaps he also sold to Benjamin F. Jackson other lands, and he collected of him a part of the purchase-money. The bill then sets out the tracts in which the plaintiff, Elizabeth M. Hull, claims dower and the tracts in which her dower interest exists only after the payment of the purchase-money, for which a vendor's lien exists. The bill then concludes as follows :

" But so it is, may it please your honor, the rights and interests of all the parties, since the division of the State, can not be adjusted by decree of the circuit court of Highland, and they are advised that by *commity,* by law and by the jurisdiction cast upon this circuit court of Highland, before the State of West Virginia became a *de jure* government; that your honorable court will render such decree in the

premises as may be just and equitable to all parties and adapted to the nature·of their case.

" In tender consideration of the premises, and inasmuch as your orator and oratrix are remediless save in a court of equity, they pray that Edward P., Lillie and Felix H., infant children of Felix H. Hull, deceased, Andrew G. Mathews and James H. Renick, Ann Mathews, William H. McClintic and Mary Ann, his wife, late Mary Ann Mathews, John W. Warwick and Benjamin F. Jackson and Kyle Bright, administrator of Joseph McClung, deceased, may be made parties defendants to this suit and compelled on their several corporal oaths true and perfect answers to make to the foregoing bill as truly, perfectly and completely as if the same were here again repeated, and they thereto severally and specifically interrogated ; that a guardian *ad litem* be appointed to defend the infant defendants ; that the defendant, Andrew G. Mathews, be compelled to convey in accordance with his covenant and agreement of October 13, 1853 ; that the amount due him on said article, and which has been transferred to James H. Renick, the amount due Ann Mathews on the lands conveyed by the deed of January 1, 1855, and referred to in the decree of the Highland circuit court (as in the hands of William McClintic), the amount due Kyle Bright, administrator of Joseph McClung, deceased, under the deed of September 26, 1855, the amount which the widow is entitled to receive *lien* of dower in all the lands aforesaid, and in the event that Benjamin F. Jackson has paid all the purchase-money on the lands sold him aforesaid by intestate, then the amount he may be entitled to recover from the personal representative be ascertained by one of the masters of this court ; that a decree be rendered directing Hugh W. Sheffey and James Bumgardner, Jr., as commissioners, to make sale of all the lands to which B. F. Jackson may not be entitled to a conveyance, and a conveyance of such or such interest of intestate therein, as he may be entitled to receive ; that such sale may be made at such time and place and upon such terms and conditions as may be most advantageous to the interests of all parties ; that a decree in harmony and in aid of the decree of the circuit court of Highland be rendered in favor of the widow, by virtue whereof her dower interest in the lands of

Pocahontas county, West Virginia, may be invested in lands in the county of Highland, Virginia; that the undivided interest in the lands owned by intestate be sold without the expense of making partition unless said Warwick insists upon partition, and in the event that he does, that partition be made, and the portion assigned as for that of intestate be sold, and grant unto your orator and oratrix all other, further and general relief as may be deemed just and equitable and adapted to the nature of their case; that your honor will, to the full extent and power of the court, co-operate by decree in aid of the circuit court of Highland, so that the real and personal assets of intestate may be disposed of to the very best interests of the widow, children and creditors of said intestate. And as in duty bound, &c., may the Com'ths, spa., issue, &c., &c."

Answers were filed by J. W. Warwick, James H. Rerick, William H. McClintic, B. F. Jackson, Andrew G. Mathews, Kyle Bright, and also a paper called the answer of William Curry, guardian *ad litem.* It is not necessary to state the contents of any of these answers. ·The contents of the papers will be given in the opinion. On September 5, 1868, the court entered the following decree :

"This cause this 5th day of September, 1868, came on to be heard on the bill of the plaintiffs, the answer of the adult defendants John W. Warwick, James H. Renick, William H. McClintic, Benjamin F. Jackson, Andrew G. Mathews, Kyle Bright, administrator of Joseph McClung, deceased, and the infant defendants Edgar P., Lillie and Felix H. Hull, children and heirs of Felix H. Hull, deceased, by their guardian *ad litem,* Wm. Curry, assigned them for that purpose by the court, general replication to said answers, exhibits filed, and the bill, which is ordered to be taken for confessed as to all the other defendants upon whom process has been duly served and who have failed to appear and answer, and was argued by counsel. And it appearing to the court that a sale of the land in the bill and proceedings mentioned is proper and necessary for the purpose in the bill stated, and it furthermore appearing to the court from the answers of the adult defendants that certain portions of the said land are subject to a vendor's lien for the balance of the

purchase-money due thereon and ought to be sold subject thereto, and that such of said vendor's as have such lien are willing to make title to their respective portions as soon as their purchase-money has all been paid them, and it furthermore appearing to the court that the defendant John W. Warwick is willing to have the undivided interest of the decedent Felix H. Hull in the sixty two acres of land mentioned in the answer of the defendant Warwick sold, in consideration whereof, it is adjudged, ordered and decreed that Sherman H. Clark, the general receiver of this court, who is hereby appointed a commissioner of the court for that purpose, having first given notice of the time and place of sale by publication once a week for four successive weeks in the Monroe Republican, a newspaper published in the county of Monroe, in the Lewisburg Times, a newspaper published in the county of Greenbrier, and in the Valley Virginian, a newspaper published in the town of Staunton, Virginia, and also by posting a notice of same on the front door of the court house of Pocahontas county, do then proceed to sell at public auction to the highest bidder, before the front door of the court house of said county, all the lands of Felix H. Hull, deceased, in the said county of Pocahontas, both divided and undivided, and in such parcels or tracts as the commissioner may deem most advantageous, on a credit of one, two, and three years, with the exception of so much in cash as may be necessary to defray the costs of this suit and the costs of sale, requiring bond and good personal security of the purchaser or purchasers, besides retaining the title of the land until the purchase-money has all been paid, and that he make report of his proceedings to the court at its next term.

"On the day of sale the commissioner is directed to exhibit a plat of the various portions or tracts in which he may propose to make the sale of the land. It is further adjudged, ordered and decreed that the said Sherman H. Clark as general receiver of this court retain the said bonds in his hands to be collected or disposed of by him as the court may hereafter order. The court doth reserve for further adjudication the distribution of the fund arising from the sale aforesaid according to the rights of the widow and the other represen-

tative parties in interest as they appear from the pleadings and proofs in this cause or as they hereafter may be shown."

A survey of all the land deemed necessary to be made by the commissioner was ordered on November 4, 1868 and was made. The commissioner after advertising these lands for sale sold them at public auction on November 27, 1868, and made report thereof to the court, at which sale various parcels of land were purchased by Richard Dudley, S. A. Wilson, John T. Hooft, James A. Price, John W. Warrick, George W. McDonnald, William Gibson, Benjamin F. Jackson and John P. Porter.

On June 7, 1869, the court by a decree confirmed all these sales except the sale to John P. Porter, which was set aside for inadequacy of price. The land sold to him bringing but $25.00 and being of very little value.

Within six months after the infant Felix H. Hull came of age, he asked the circuit court of Pocahontas to give him leave to file his petition and answer in this cause, to re-open the same and set aside among other things the two decrees in this cause above set out. The court granted the leave and this petition and answer were filed October 18, 1882; and process was awarded against the defendants named in it, which was duly executed on all of them. The petition set out all the proceedings above stated in this cause and many others had since the decree last above named was rendered, but which need not be stated nor his objections to them. His objections, so far as it is necessary to state them in this case, were, first, that the petitioner never was a party to this cause, and that no answer of his by a guardian *ad litem* was ever filed; second, that F. H. Hull never had a personal representative in this State; third, that no account of the personal estate of F. H. Hull was ever taken, and yet his lands were sold by order of the court; fourth, that Hugh W. Sheffey, the administrator of F. H. Hull in Virginia, could not be a plaintiff in a suit in this State; fifth, that there was no determination of the amount or priorities of the liens on the lands of F. H. Hull, before his lands were ordered to be sold and actually were sold, that the bill does not present a case for the ascertainment of the general indebtedness of Felix H. Hull, deceased, and that the widow could only ask that

so much of the lands of her husband should be sold, as would satisfy the liens on them, which had priority over her dower, instead of which all of the lands of her husband were ordered to be sold and were sold, and in doing this the decree ordering the sale assumed, that the statement made by Warrick in his answer as to a final division of lands between him and Felix H. Hull was true, there being no proof of its truth; sixth, that the decree confirming these sales was erroneous, because the report of the commissioner of sale was too defective and vague for identification with the land decreed to be sold either with reference to its location, quantity or title; that the lands were sold at grossly inadequate prices; that instead of selling Felix H. Hull's undivided moiety of the 1180 acres of the land named in the bill he sold an entire interest in a part thereof and an undivided interest in 116 acres thereof; that this land was advertised as an undivided interest in 1129 acres and an undivided interest in sixty two acres, and the advertisements were in other respects misleading, and the description of the land to be sold differs in each advertisement, and is incorrect in all of them, and was not published for four successive weeks prior to the sale, and no bond was given by the commissioner of sale and none required of him.

The assignments of error in the subsequent proceedings after the decree last above given I need not state. They were seven in number but have not yet been acted upon by the circuit court. This petition then proceeds as follows:

"Petitioner further says, as allegation of mere facts, that by order of court in this suit a deed was made to Richard Dudley and Samuel A. Wilson for the land purchased by them and John T. Huff, the latter uniting in the deed under previous contract to allow the other two the whole of the land so purchased, they becoming responsible for all the purchase-money. Said Richard Dudley has since departad this life, leaving a will by which his interest in said land was devised to Edwin T. Dudley, Rodney H. Dudley, Alexander P. Dudley and Ernest M. Dudley. A deed for the land purchased by James A. Price was made by order in the suit to John C. Price, and by another order, a deed in which Benjamin F. Jackson and wife united for the land purchased by

the said Jackson was made to T. Jefferson Hiner and Aurelius Gilkerson, and subsequently said Hiner conveyed all his interest in said land and said Gilkerson one sixth of his interest therein to Andrew G. Crawford and William A. Crawford. John W. Warrick, George W. McDannald and William Gibson are in possession of the lands purchased by them respectively.

"By an order of the circuit court of Pocahontas county, West Virginia, the personal estate of said Felix H. Hull, deceased, was committed to Samuel L. Gibson, a former sheriff of said county, as such sheriff, for administration, and by an order of the clerk of the county court of said county, R. S. Turk was appointed administrator of Elizabeth M. Turk, the said widow of Felix H. Hull, deceased, and he has qualified and is acting as such administrator. The said Andrew G. Mathews and Ann M. Mathews have departed this life, and by orders of the clerk of said county court, the personal estate of each was committed for administration to Levi Gay as sheriff of said county. The said James M. Seig has also departed this life, and D. G. McClung was appointed in Pendleton county, West Virginia, as his administrator, and has qualified there, and is acting as such administrator. The suit in which the decrees aforesaid were entered, is styled upon the docket and record of this court, " *F. H. Hull's administrator and widow* v. *F. H. Hull's heirs et als.*" The title to one third of all the land sold under decree in said suit, except the portion sold as the land of Benjamin F. Jackson, descended to the petitioner, upon the death of said F. H. Hull, as one of his three children aforesaid, who constitute his only heirs-at-law. This petitioner is advised and charges that neither of the pretended debts nor any part thereof set up in said suit as payable out of the estate of said F. H. Hull, deceased, are valid and subsisting claims of which payment can lawfully be enforced by a sale of the real estate, or any part thereof, situate in Pocahontas county, West Virginia, belonging to the said F. H. Hull, father of your petitioner, at the time of his death, and that for the reasons hereinbefore shown, such enforcement to the extent of depriving petitioner of all of his said inheritance is erroneous in fact and form.

" This petitioner therefore prays that this his petition may

be read in the said suit of *F. H. Hull's administrator and widow*
v. *F. H. Hull's heirs et als*, and considered also as his answer
to the bill filed therein, and that all the papers and record of
said suit may be read in connection therewith; that the said
Hugh W. Sheffey, Benjamin F. Jackson, James H. Renick,
Levi Gay, sheriff of Pocahontas county, and as such admin-
istrator of Andrew G. Mathews, deceased, and as such sheriff,
administrator of Ann M. Mathews, deceased, William H. Mc-
Clintic and Mary Ann McClintic, his wife, John W. War-
rick, Kyle Bright, administrator of Joseph McClung, de-
ceased, Edwin T. Dudley, Rodney H. Dudley, Alexander P.
Dudley, Ernest M. Dudley, Samuel A. Wilson, George W.
McDannald, Aurilius Gilkerson, Andrew G. Crawford, Wil-
liam A. Crawford, John C. Price, William Gibson, Sherman
H. Clark, Lucius H. Stephenson, William Skeen, D. G. Mc-
Clung, administrator of James M. Seig, deceased, Edgar P.
Hull, L. K. Huff and Lillie E. Huff, his wife, R. S. Turk, ad-
ministrator of Elizabeth Turk, deceased, and Samuel L. Gib-
son, administrator of F. H. Hull, deceased, may be summoned
to answer to this petition; that all appropriate matter herein-
before set out may be considered as allegations of exception
specifically made to the several reports of commissioners ap-
pointed and acting in this cause; that all and each of the de-
crees entered in the suit aforesaid may be reviewed, reversed,
set aside and declared void as to this petitioner, and he be
adjudged the title and right of possession to, as also the rents
and profits since the sale, upon the interest in the said land
inherited by him as aforesaid, or if the court be of opinion
to refuse this, then that restitution of the proceeds of sale
corresponding with such interest be decreed to him from the
parties respectively who by this petition and the papers and
records of said suit read therewith are shown to have received
the same.

"He also asks such other and general relief as the court
may see fit to grant."

The purchasers of the land of Felix H. Hull filed a demur-
rer and answer to this petition setting out, that they had paid
all the purchase-money for these lands, and that deeds had
been made for the lands to them severally by subsequent
orders of said court; that the lands sold for their full value,

as the report of the sales showed. They insist that the decree of the court of September 5, 1868, shows that the infants including the petitioner, Felix H. Hull, did answer by their guardian *ad litem ;* and that this is conclusive on this point. These answers are long and argumentative; but the only fact stated in them not appearing in the record is found in the conclusion, which is, that the respondents have been in actual possession of the lands purchased ever since the sales were confirmed, and have made valuable improvements on the same.    The answers of B. F. Jackson and J. H. Renick relate only to matters not before this Court for review.

On October 18, 1883, the following decree was entered :

" More than three months having elapsed since the filing of the petition of F. H. Hull in this cause, and the service of a subpœna upon the resident defendants Levi Gay, sheriff of Pocahontas county, and as such administrator of Andrew G. Mathews, deceased, and as such sheriff and administrator of Ann M. Mathews, deceased, William H. McClintic and Mary Ann, his wife, John W. Warwick, Kyle Bright, administrator of Joseph McClung, deceased, John C. Price, William Gibson, S. H. Clark, D. G. McClung, administrator of J. M. Seig, deceased, R. S. Turk, administrator of E. M. Turk, deceased; Samuel L. Gibson, administrator of F. H. Hull, deceased ; and the petitioner having regularly proceeded against the absent defendants, Hugh W. Sheffey, A. Gilkerson, A. G. Crawford, W. A. Crawford, L. H. Stephenson and William Skeen by order of publication, and they still failing to appear and answer, said petition as to them is taken for confessed ; and these causes coming on this day to be heard upon the papers formerly read; the said petition of F. H. Hull filed in the cause aforesaid, taken for confessed as aforesaid, the joint answers and demurrer of Edwin T. Dudley, Rodney H. Dudley, A. P. Dudley, E. M. Dudley, S. A. Wilson and George W. McDannald, and the separate answer of J. H. Renick, and the separate answer and demurrer of Benjamin F. Jackson to said petition, with general replication thereto, and joinder in said demurrers, was argued by counsel. Upon consideration whereof, it is adjudged, ordered and decreed that said demurrer be overruled *pro forma ;* and the court being of opinion that there is no equity in the petition of the

petitioner aforesaid, so far as it seeks to set aside and cancel
the sales of lands made under former decrees in the said cause,
it is further adjudged, ordered and decreed that the petition
be dismissed so far as it refers to setting aside and cancelling
said sales made to the defendants aforesaid, and that said
defendants recover from said plaintiff in said petition their
costs about their suit in this behalf expended; and the hearing
of all other questions are reserved and the cause continued."

From this decree Felix H. Hull has been granted an
appeal to this Court.

*R. S. Turk* for appellant.

*R. L. Parish* and *J. Bumgardner Jr.* for appellee.

GREEN, JUDGE:

We will first consider what errors, if any, there are in the
decree of sale made on September 5, 1868, for which it would
have been reversed, had it been appealed from and supeseded
prior to the sale of the lands, of which Felix H. Hull died
seized. In the first place it is obvious, that Hugh W. Shef-
fey, the administrator of Felex H. Hull in Virginia, could
not properly be a plaintiff in this cause, whether we regard it
as a suit brought to obtain the dower of the widow of Felix
H. Hull or as a suit brought to subject to the payment of the
debts of Felix H. Hull the lands, of which he died seized.
As the adminisrator of Felix H. Hull in Virginia he had no right
to institute a suit of any sort in this State. But even had he
qualified as administrator of Felix H. Hull in this State, he
clearly had no right to institute this suit. When this suit
was instituted, the administrator had nothing whatever to
do with the real assets of his intestate. The first time au-
thority was conferred on an administrator in this State to bring
under any circumstances a suit in' equity to subject his intes-
tate's real estate to the payment of his debts was by the Code
of West Virginia, chapter 86, section 7, which took effect
April 1, 1869, nearly a year after the institution of this suit.
The misjoinder of a plaintiff might be fatal in a common law
suit; but it would not be fatal in a chancery cause, when he was
as in this case a party, who on the face of the bill had no in-
terest whatever in the cause. In such a case, though his

name had not been stricken out as a plaintiff by an order of
the circuit court, as it might have been, still on appeal it
would not be ground for reversing any decree, which would
have been proper, if such party having no interest in the
cause had not been made a co-plaintiff. The making of such
a person a party co-plaintiff would not render the bill multi-
farious. All that was said by him in the bill not bearing on
the matter, in which relief was sought by the bill, would be
treated by the appellate court as mere surplusage. Stripped
of all this surplusage including all that it said with reference
to obtaining decrees in the circuit court of Pocahontas county
to aid and co-operate with the circuit court of Highland
county which was all obviously foreign matter, this case must
be regarded simply as a bill filed by the widow, Elizabeth
M. Hull, to obtain her dower in her husband's lands in this
State. The widow could not bring a suit to have the lands
of her husband sold and out of the proceeds after deducting
the value of her dower to have the residue paid to the cred-
itors of her husband and the balance, if there should be any,
to the heirs. This would be a creditors' bill, which she could
not bring; and if this bill can not be regarded as a creditors'
bill, neither can it be converted into a creditors' bill by peti-
tion of creditors or in any other manner.

If her children, the heirs of her husband, had been adults,
perhaps the court below could have ordered a sale of all the
lands of her husband in this State, in which she was entitled
to dower, as a mode of assigning her dower, and could have
partitioned the proceeds among the parties entitled thereto
including the vendors of the lands, who had vendors' liens
upon these lands superior to the widow's right of dower, if
the heirs all adult had consented to this mode of assigning
the widow's dower. Of course these vendors would be
proper parties defendant to such a suit, but persons having
liens on these lands, which were not superior to the widow's
right of dower in them, and the general creditors of the in-
testate would not have been proper parties defendant in such
a suit; for a widow has no right to bring a suit to subject the
intestate's lands to the payment of her husband's debts. She
can not bring a creditor's bill. In fact no one but a creditor
could have brought such a suit at the time this suit was in-

stituted in 1858, though by the Code of West Virginia chapter 76, section 7, p. 506 a personal representative of an intestate may under circumstances now bring such a suit.

If a creditor holding a vendor's lien was to bring a suit to enforce his lien after the death of the intestate, the proper parties to such suit would be the widow and heirs of the intestate, there being in such case no necessity before the sale to ascertain the amount and priorities of other liens. (*Cunningham* v. *Hendricks*, 23 W. Va. 580, syl. 4.) All the parties to this suit to enforce a vendor's lien against an intestate's land are the vendor, the widow and the intestate's heirs; and these were the only necessary and proper parties to this suit. I have said in such a suit as this brought by the widow against the adult heirs of her husband and those having vendor's liens or other liens superior to the widow's right of dower perhaps the court with the consent of these adult heirs, when they were all adult, might sell the lands of the intestate and assign the widow her proportion of the proceeds, distributing the balance of the purchase-money among those vendors, who had liens superior to the widow, and among the heirs being all adults according to their respective rights.    But the right of the court even under these circumstances with the consent of all the adult heirs might be questionable.    It is true, that the heirs could themselves sell such real estate, when the intestate died solvent, and the lands in the hands of the purchaser would not be liable, provided the sale was *bona fide* and not made to defraud the intestate's creditors by depriving them of the real assets of the intestate, which the statute-law makes liable for the payment of all the debts of the intestate, and provided such sale was made before a suit had been instituted to subject the land. (See § 3 of ch. 131 of the Code of Va. of 1849, and § 5, ch. 131 of Code of Va.; and § 3 of ch. 86 of Code of W. Va., and § 5 of ch. 86 of Code of W. Va., and *Rex* v. *Creel*, 23 W. Va., pages 379 and 380.)

But if the court in a suit brought by the widow against the adult heirs of the intestate could by consent of all parties sell all the intestate's lands and confer a perfect title on the purchaser, there would seem to be danger, that the creditors of the intestate, who could not be made parties to such a suit, might

be defrauded out of the real assets of the intestate, which the law makes liable for their debts. For in such suit I do not see, how the court could make enquiry, as to whether the sale asked to be made by all the parties was or was not *bona fide,* or whether there might not be a suit elsewhere pending to subject the real assets to the payment of the intestate's debts. But in such a suit brought by a widow against the heirs of her husband for her dower, even though they be all adult, yet if any one of them objects to the sale of all the lands and an assignment of the widow's dower in money and a payment of the balance of the proceeds of the sale, to the heirs according to their respective rights, though the other heirs consent to this, could it be fully proven, that it is obviously to the interest of the widow and all the heirs, that all the lands should be so sold, it is not competent for the court to decree such sale. This is a necessary deduction from the case of *White* v. *White,* 16 Grat. 264, syl. 1 and 2.

In that case the suit was brought by an adult heir against the widow and other heirs for an assignment of dower. The bill alleged, that " though the estate is a large one, yet from its peculiar condition dower can not be alloted to the widow nor partition made among the children without great injury to the parties; and their interest will be promoted by a sale of the entire subject, and the assignment of dower and the disposition of the proceeds of sale according to the rights of the parties." It was fully proven by the evidence, that the interest of all parties would be promoted by such sale and distribution of the proceeds of sale; but the widow insisted on an assignment of her dower in land by metes and bounds. In their opinion the court say, pp. 367 and 368 : " The court is of opinion, that, as it is not made to appear, that it was impossible to assign the appellant her dower of and in the real estate of her husband, it was not competent for a court of equity in the exercise of its general power to decree a sale of the whole property and to provide a compensation in money to the appellant in lieu of dower against her will and without her consent, however much it might be to the interest of the heirs at law of the decedent to have a sale of the whole estate and a monied compensation allowed the appellant instead of a sale of two thirds of the estate and the remainder subject to the

life-estate of the widow. And the court is further of opinion, that the widow entitled to dower in the estate of·her·deceased husband is not a joint-tenant, coparcener nor tenant in common with the heirs at law within the meaning of the statute concerning partition in the Code of Virginia, (Code of 1860 ch. 124, p. 581, Code of W. Va., ch. 79, p. 486); and therefore no power is conferred by that statute upon a court of equity to sell the whole estate against her will and without her consent, and to compel her to receive a monied compensation out of the proceeds in lieu of dower."

We may infer from this, that, if the widow had consented, the sale of all the lands might have been made, even though some of the heirs objected or did not consent. And that would have been so in that case, because the suit was brought by one heir or coparcener to partition their lands and to assign a dower. Now the statute of partition, (Code of Virginia of 1860 chapter 124 p. 581, Code of West Virginia chapter 79, p. 486) provides that in a suit for partition among coparcenets: "Where partition can not be conveniently made, if the interest of all will be promoted, a sale of the entire subject may be made, even though some of these be infants." Of course this means necessarily without the consent of all the coparceners. This could not have been done at common law or without this statute. If the widow brings a suit for her dower and partition among the heirs, as she is not a coparcener, this statute can not apply, and the court of equity has only its general powers independent of statute-law; and under these general powers it could not without the consent of all sell the lands. If all consented, I should think it doubtful, whether a court of equity would entertain the suit, as then there would be no sort of necessity for any action by the court, as the owners of the land could by consent without the aid of the court sell the lands and divide the proceeds. But if dower is also to be assigned, the interposition of a court of equity becomes necessary to estimate in the particular case the pecuniary value of the widow's dower in money. My conclusion therefore is, that in no suit brought by a widow for her dower in lands, to which the heirs have a legal title, has the court a right to decree the sale of the husband's lands without the consent of the heirs, and there-

fore, if the heirs or any of them were infants, as the consent of an infant can not be given, the court can not in such case decree a sale of the lands of the intestate.

This reasoning is all based on the supposition, that there is no lien on the land superior to the widow's right of dower. Let us now consider what effect the existence of such lien would have upon the widow's right to have the land sold, and her dower assigned out of the proceeds. This matter was considered in *Daniels et al.* v. *Leitch*, 13 Grat. There the husband had bought a tract of land, upon which was a deed of trust for a large amount, and the deed of trust authorized the trustee to sell the whole and not a part of the tract to pay this large debt. The husband died, and the widow brought a suit, in which her infant children the heirs of her husband were made defendants and also the administrator of her husband and the trustee and the *cestui que trust*. She set out that her husband's personal estate would not pay his debts, and it would become necessary to sell this tract of land, and that it was to her interest and that of her infant children, that this tract of land be sold and with the personal estate be applied to the payment of her deceased husband's debts, and the residue of the proceeds invested for the benefit of her and of her children; and she alleged, that such sale would be greatly beneficial to her children, and she asked a settlement of the administrator's accounts. Upon the proof of these facts the court ordered a sale of this tract of land, and the land was sold, the purchase-money paid and the deed of trust released. The purchaser becoming alarmed about the title filed a petition in this suit and asked to have this sale set aside and his purchase-money returned. Thereupon the guardian of these infant children filed his bill under the statute of selling the lands of infants, set out these facts and asked, as the lands had been sold at a high price, that the sale might be approved and the purchaser quieted in his title. All the proceedings in this suit were in strict conformity to the statute for selling infant's lands. The purchaser denied that he had got any title to the land, the sale in the suit by the widow being invalid and null, and as the other parties had a right to repudiate this sale, he should not be held bound by it. A creditor of the intestate also filed a bill asking on behalf of himself and all other creditors,

this sale be enforced, which the purchaser in his answer insisted ought not to be done.

These three causes were heard together; and the circuit court held, that no sale of the land could properly be made in the widow's suit, and released the purchaser and directed the money, which he had paid, to be refunded, and after some other proceedings ordered this tract of land to be again sold. On an appeal from these decrees the appellate court held, that the court had a right to order the sale of this tract of land in the suit brought by the widow, basing its opinion in part on the facts, that in that case this tract of land was liable primarily to the payment of the debt secured by the deed of trust, as the intestate had bought the land subject to the deed of trust. The court based their opinion in part on the fact, that the deed of trust provided, that if the semi-annual interest on the debt secured was not paid promptly, or the principal sum, $5,000.00, was not paid when demanded, the *trustee should sell the whole tract of land for cash.* But it held, that if there had been a defect in the title conveyed to the purchaser in the widow's suits, it was not incurable, and it might and ought to have been cured by a decree of confirmation of the title in one or both of the other suits; that after the purchaser had permitted the sale to be confirmed without objection, he had no right to be discharged from his contract, even though no title was conveyed, unless the defect was either incurable or such as can not be cured in a reasonable time. The decrees were accordingly reversed, and this ordered to be done. The conclusion to be drawn from this case is, that where the husband did not have the legal estate in the land but only an equity of redemption, the debt to be paid out of the land being superior to the widow's right of dower, a court of equity is not necessarily confined in the assignment of her dower to assign it by metes and bounds or in a common law mode, but when the interest of the widow and of the heirs will be promoted by a sale of the real estate and a payment of the debt, which is a lien upon it, especially when the debt is primarily payable out of the land and not out of the personality, and the whole tract of land may of right be sold by the trustee of the creditor to pay the debt, the court may sell the whole tract of land

and assign the widow her dower, when she has brought a
chancery suit for the purpose, even though the heirs be in-
fants.   But nevertheless a court of equity unless under pe-
culiar circumstances in assigning dower to the widow in
an equity of redemption in land should follow the law and
assign her dower in the common law mode giving her one
third in value of the equity of redemption and assigning to
her by metes and bounds her dower, leaving the residue
of the lands in the hands of the heirs first liable to the pay-
ment of the debt.

It would follow that if the land is subject to a vendor's lien,
only the legal title being in the heirs of the husband, and a
suit is brought by the widow in a court of equity against the
infant heirs of the intestate, a court of equity under its gen-
eral power could not sell the whole tract of land and give
the widow her dower out of the proceeds, even though it
should be made to appear, that the interest of the infant heirs
would thereby be promoted.   If, however, the husband had
purchased the land and had paid for it in part, but had no
deed therefor, but only a contract entitling him to a deed
upon the payment of the purchase-money, a court of equity
under its general powers could sell the whole land and assign
the widow her dower in the proceeds of the land in a suit
brought by her for her dower, even when the heirs were in-
fants, if their interest would be thereby promoted; but such
a power it ought not to be exercised except under peculiar cir-
cumstances, and having ascertained the value of her dower-
interest it should assign it to her by metes and bounds leav-
ing the residue of the land in the hands of the heirs liable to
the payment of the balance of the purchase-money due or
selling a sufficiency of it to pay this balance of the purchase-
money.

My conclusion therefore is, that the court in this case, all
the heirs being infant defendants, and the suit having been
brought by the widow for an assignment of her dower, had no
power to decree a sale of any of the lands, when the legal
title of the lands was in the husband in his lifetime.   And
it was not proper for the court to decree the sale of any of
the lands, which the husband had purchased and paid for in
part during his lifetime ; first, because there were no peculiar

circumstances stated in the bill, which would justify such a decree of sale; and, second, because there was not a particle of proof, that the interest of the infant-heirs would be promoted by a sale; and lastly, because there was no answer filed in the cause by their guardian *ad litem*, without such answer the court had no power or authority to sell any of the lands of these infants, whether their title to them was legal or only equitable.

Against these conclusions the appellee's counsel have relied greatly upon certain recent Virginia decisions. These decisions are not binding authority on this Court; and on the points, on which they are relied we decline to follow them, because we regard them in violation of fundamental principles. The first of these cases and the one principally relied upon is *Zirkle* v. *McCue et al.*, 26 Grat. 517, decided in 1875. It was one of those cases, in which because of the results of the late war and the fact, that Confederate treasury notes became utterly valueless, the grossest injustice would have resulted to the parties, if the court had not reached the conclusion which it did. Doubtless this had great weight with the court and influenced them to lay down some propositions of law in that case. It was a suit brought by a widow for her dower against the heirs of her husband, some of whom were infants. She states in the bill, that she is the guardian of her infant children, who were among the heirs of her husband; (but it is very apparent on the face of the bill, that she did not sue for herself as widow and as the guardian of her infant children.) She states, that it is probable that the interest of all the parties would be promoted by a sale of the land, but says she is willing to take her dower in kind or out of the proceeds of a sale, if that be adjudged best. She made the administrator of her husband a party defendant also, and asks that such decrees may be made as are necessary for the final adjustment of the rights of all parties in the whole estate real and personal. On June 16, 1863, the court by a decree assigned dower to the widow in kind, but then, on the ground that the interest of all the heirs would be promoted by a sale of the residue of the land and a division of the purchase-money, it ordered a sale of the balance of the land. It was sold, and the sale

was confirmed by a decree in November, 1863, and as the purchasers paid all the purchase-money, by the same decree it was ordered, that deeds be made to them which was done. The purchase-money having been paid in Confederate notes and they having become valueless, so far as the interest of the infant heirs in the land was concerned, in 1871 these infants by their next friend, their mother, instituted a chancery suit to review these decisions and set them aside and restore them to their rights; and the circuit court did set aside said sales, as they affected the interest of the infants in said suit, and directed that each of the plaintiffs then infants be allotted their share of the land so purchased by metes and bounds. The court of appeals reversed this decree. Judge Staples in pronouncing the opinion of the court on pages 526 and 527 says:

"But if it be conceded that according to strict right, a suit for partition can not be maintained by a person occupying the position of both guardian and widow, still if a bill is filed by such person for assignment of dower and in the progress of the suit the court having all the heirs before it shall ascertain that their interest will be protected by a partition or sale, there would seem to be no reason why it should not decree accordingly instead of turning the parties around to a new suit. It would simply be a decree between defendants. Such an irregularity, if it be one, would clearly not be sufficient to reverse the proceedings and vacate the sales as against a purchaser for value clothed with the legal title."

This suit being really brought by the widow in her own right to obtain her dower and for the assertion of certain other rights, and not being formally brought by her as guardian of her children, and the bill further showing, that she did not mean by it to demand anything whatever as guardian of her children, the fact, that it was stated in the bill, that she was their guardian, ought to have been, it seems to me, regarded as mere surplusage and as not changing the suit at all, and that it was really a simple suit by the widow in her own right only. All that is said in this extract from the opinion of the court is based on the assumption, that the fact, that she was the guardian of her children, was an important matter as altering the character of the suit. It is tacitly admitted, that, had she not

been guardian of her children, and had this not appeared on the face of the bill, the decree of the circuit court setting aside the decree of sale and the decree confirming the sales and restoring these infants to their original rights must have been affirmed. So that, so far as the case before us is concerned, I regard this decision as sustaining the views of the appellant in this case; for in this case the widow was not the guardian of her infant children. But had she been, it would not in my opinion in the least degree alter the case. As stated in the above extract from the opinion in *Zirkle* v. *McCue et al.*, the suit was brought for an assignment of dower, and it was assigned. How according to fundamental principles was it possible for the court to go on and ascertain, whether the interest of the defendants would be promoted by a sale of the lands belonging to them? The widow had not a shadow of interest in this question; and certainly there can be no decree rendered in any case between co-defendants, except when it is based upon pleadings and proofs between the plaintiff and defendants. I need scarcely cite authorities to sustain this fundamental principle, (but see *Vance* v. *Evans et al.*, 11 W. Va. 342, syl. 1.) This fundamental principle is obviously violated in this part of the opinion of the court in *Zirkle* v. *McCue et al.*, 26 Grat. 527; and it is therefore disapproved.

*Durrett* v. *Davis, guardian et als.*, 24 Grat. 302, was another of those cases, in which any other decision than that reached by the court would have operated great injustice to the parties, resulting from the fact, that the purchase-money of the land was paid during the war and invested in Confederate bonds or in certificates of the debt of the State of Virginia and became wholly or in a large measure valueless to the infant heirs, who doubtless sought to set aside the sales because of such accidental loss. But they showed, as I conceive, fatal errors in the decree ordering the sale of the lands, and if the court had reversed the decree of sale, in all probability the purchaser would have lost the land, which he had fairly purchased and paid for, though the court does not decide this point, because they held, there was no fatal error in the decree ordering the sale. Yet on pages 517 and 518 the court on this question say: "Whatever may be the current of au-

thorities in other States, the question may be regarded to
some extent open in Virginia.  The tendency of opinion has
been that the title falls with the reversal of the decree, except
so far as the sale is within the influence of the statute." The
court referred to the statute in Code of Virginia, ch. 178,
§ 8, p. 735, Code of West Virginia, ch. 178, § 8, p. 735.  The
court being under this pressure approved the decree order-
ing the sale.  Judge Staples in delivering the opinion on pages
310 and 311, says:  " It is true, it does not appear, that the
answer of the guardian *ad litem* was sworn to.  But it may
have been done in open court, and the entry omitted by the
clerk, or the paper containing the endorsement lost or mislaid
during the war, at the time the public records were taken
from the office and concealed in the country.  We are not to
presume that the able and efficient judge then occupying the
bench was ignorant of a plain provision of the statute requir-
ing such oath, or that he would have received and acted upon
an answer not in conformity with these provisions.  Every
reasonable intendment should be made in this Court in favor
of the regularity of the proceedings below, when the contrary
does not plainly appear.  And this upon the maxim, *Omnia
præsumuntur rite esse acta.*  More especially ought this to be
the case in favor of a *bona fide* purchaser for value in support
of a sale clearly established to be for the benefit of the infant
at the time it was made."

In reference to this I have only to say, that to my mind it was
a plain and palpable misapplication of the maxim referred
to; and if such violent presumptions are to be made by an
appellate court, then no decree of a circuit court could ever
be reversed, for we can always imagine that the court has
made some order correcting the blunders in his decrees as
the record was presented to the appellate court, and that the
clerk has through inadvertance omitted to put it on the re-
cord.  The decision of the court in that case was based on
the presumption, that this answer of the *guardian ad litem*
was sworn to, which was not shown by the record.  The de-
cision was made in 1874 and is not binding authority on this
Court and is by us disapproved.  If the record had not shown
what was the answer filed by the *guardian ad litem*, but it had
been lost, and the decree stated it had been filed, then it

might have been presumed, that it was a proper answer and sworn to. But as the record showed on its face what was the answer of the *guardian ad litem*, and that it was not sworn to, there was no room left for presumptions.

In the case before us the decree of September 5, 1868, says among other things, that the answer came on to be heard on "the answers of the infant defendants Edgar P., Lillie, Felix H. Hull, children and heirs of Felix H. Hull, deceased, by their guardian *ad litem*, Wm. Curry, assigned them for that purpose by the court." It is error to decree the sale of infants' lands without an answer has been filed by the guardian *ad litem*. This recognition of Wm. Curry as the guardian *ad litem* of these infants is a sufficient appointment of him as such; and the enquiry remains: Did he file an answer? The Code of Virginia of 1860 was then in force as the law of this State. Section three of chapter one hundred and twenty eight of Code of Virginia of 1860 p. 590 provides that, "to every infant there shall be appointed a guardian *ad litem*, who shall answer the bill on oath." This decree recites that these infants by their guardian *ad litem* did file an answer. In the English practice all the papers, as bill, answers, &c., on which it is recited in a decree a cause came on to be heard, are copied at length into the decree, so that the decree entered on the record-book constitutes a complete copy of the record of the cause. In our practice instead of copying into the decrees the bill, answers, &c., they are simply referred to in the decree and are then treated as a part of the decree, precisely as though they had been copied at length in them, the clerk in whose custody are the papers of the cause, identifying the bill, answers, &c., referred in the decree. In this case the clerk has sent up as the answers of these infant-defendants by their guardian *ad litem* the following paper:

"This respondent for answer to said bill or to so much thereof as he is advised it is material for him to answer unto, considereth and saith that the defendants are infants of tender years; that he knows nothing certainly of the facts stated in the bill; that he does not therefore admit the allegations in the bill but requires full proof thereof, and places the rights and interests of said infants under the care and

protection of this honorable court. Having fully answered, &c., he prays, &c."

At the foot of this paper is the following form of an affidavit:

"POCAHONTAS COUNTY, to-wit:

"This day William Curry, guardian *ad litem* as aforesaid made oath before me that all the facts stated in the foregoing answer are true to the best of his knowledge and belief. Given under my hand this——day of——1868."

We must regard this paper as if copied into this decree of September 5, 1868, ordering the sale of these infants' lands as the answer of the guardian *ad litem* stated in this decree to have been filed. If this paper can not be regarded as an answer, then we must regard the recital in this decree, that the cause was heard among other things on an answer of these infants by their guardian *ad litem* as contradicted on the face of the decree, and therefore as not true. Now it seems to me apparent, that this paper can not be regarded as the answer of Edger P. Hull, Lillie Hull and Felix H. Hull, infants, by their guardian *ad litem*, William Curry. The name of neither William Curry nor any of these infants appear on this paper at all. It is not signed by William Curry nor by any attorney for him. It would just as well be an answer of any other infants as of those heirs of Felix H. Hull. It is not sworn to as the law then required, that it should be; and there could be no presumption, that it was ever sworn to because at the foot of this paper is an affidavit drawn for William Curry, but which affidavit was never made, as appears on the face of it, as there is not to it the signiture of any officer. We might as well regard a piece of blank paper as an answer as this piece of paper totally unmeaning on its face and not even showing whose answer it was intended to be. This decree of the sale of infants' lands was made September 5, 1868, when no answer had been filed by their guardian *ad litem*. This alone is sufficient to reverse the decree, because these infants were not before the court, when the court decreed a sale of these lands.

It remains now to determine, whether if this decree is reversed, as it must be for the reasons which I have stated, the title of the purchasers made at the sale under this decree,

which sales have been confirmed by the court, can be affected by such reversal. When this decree was made, the Code of Virginia of 1860 was in force in this State. It provided in chapter one hundred and seventy-eight, section eight: " If a sale of property be made under a decree or order of a court, *after six months from the date thereof*, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." In this case the decree of sale was made September 5, 1868; and the sale was made in less than three months thereafter, on November 27, 1868. This statute has then no application in this case; but if it did apply, I would not regard it as leading to any different conclusion from that which I have reached. In examining this question it will suffice to show, that if we regard as law what is said by Judge Staples upon this point in *Zirkle* v. *McCue et als.*, 26 Grat. 529, still the title of the purchasers under this decree of September 5, 1868, must for the reasons we have stated fall, if this decree is reversed. The decision of this case made in 1875, is of course not binding authority upon us, and as I have said, there is much in it, which we do not approve; but as Judge Staples in that case reviews at some length the Virginia authorities on the subject under consideration, and as I do not deem it necessary to review them in this case, I will simply quote his conclusion which is thus expressed :

" These extracts, and others that might be given, show that while this court has never gone as far as the courts of other States in favor of purchasers at judicial sales, it has on all occasions, manifested a very strong disinclination to interfere with the rights of such purchasers, unless upon palpable and substantial errors in the proceedings and decrees under which such titles are acquired."

Assuming this to be a correct conclusion from the decisions in Virginia made prior to the formation of this State and binding on us as authority, I am clearly of opinion, that as the decree of sale of September 5, 1868, was made without a particle of evidence of any sort, from which the court could have concluded, that the interest of the infants, the sole

owners of these lands, would be promoted by such sale, and as upon this as well as other grounds this decree must be reversed, the title of the purchasers at the sale made under this decree must fall with the reversal of the decree; for this surely constitutes a *palpable and substantial error in the proceedings and decree.*

But the conclusion, which I have reached, that the titles of all the purchasers of lands under this decree must be set aside and fall with the reversal of the decree, I prefer to put upon higher grounds, grounds which would necessarily lead to this result in any State in this Union. All the decisions agree, that in order to protect a purchaser at a judicial sale, which has been confirmed, the court making the decree of sale must have competent jurisdiction not only over the parties whose lands are to be sold but also over the subject-matter, that is, shall have power to render a decree of sale. The Supreme Court of the United States as well as the courts of appeals in many of the States hold, that, where the court has competent jurisdiction of the parties and a discretion to decree a sale, although the judgment-order in ordering the sale of lands may be reversed, yet all rights acquired at a judicial sale, while the decree or judgment was in force, and which it authorized, will be protected. It is sufficient for the buyer to know, that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale. With the errors of the court he has no concern. (*Gray* v. *Briguardeth*, 1 Wall. U. S. R. 627–634; *Thompson* v. *Tolman*, 2 Peters R. 168; *Voorhes* v. *Bank of United States*, 10 Peters R. 449 and Rover on Judicial Sales, sec. 63 pages 30 and 31, and authorities there cited, and especially *Abbe* v. *Wood*, 6 Mass. 79 and Rover on Judicial Sales, pages 60, 61 and 62 and sections 138, 139, 140 and 141 and the authorities there cited.) The Virginia authorities have not gone this far in protecting purchasers at sales, except where they are protected by the statute before referred to. (*Zirkle* v. *McCue et als*, 26 Grat. 528; *Capehart* v. *Dowry*, 10 W. Va. 130; *Underwood* v. *Peck*, 23 W. Va. 704; *Haymand* v. *Camden*, 22 W. Va. 180; *Poppenheimer* v. *Roberts*, 24 W. Va. 702.) But even on the decisions of the Supreme Court of the United States and of some of the States other than

Virginia it is clear, that the purchasers under the decree of September 5, 1868, in this cause can not be protected; for the cou t obviously had no jurisdiction to enter this decree of sale, as it had no jurisdiction of the infants, whose lands were decreed to be sold, they never having appeared in the cause by guardian *ad litem*, the only way in which they could have appeared. This decree therefore can not protect any of the purchasers under it. When this decree is reversed, because these infants were not before the court, the title of the purchasers necessarily falls in the reversal of the decree, for the reason that it was from the beginning void and of no effect. This court had, as we have seen, no authority to order the sale of any of the lands of these infant-defendants, even if they had answered the bill by their guardian *ad litem*, when they had the legal title to the lands. The court having no jurisdiction to decree such sale in this cause, the purchasers of such lands can not be protected by such decree, though the court has confirmed the sales made to them; and on a reversal of such decree the title of such purchasers must fall with such reversals. The title of most of the purchasers of these lands would thus fall, even if the guardian *ad litem* had filed an answer for the infant-defendants.

The decrees of October 18, 1883, of June 9, 1869, and of September 5, 1868, must all be reversed, set aside and annulled; and the appellant must recover of the appellees Edwin F. Dudley, Rodney H. Dudley, Alexander P. Dudley, George W. McDonald, Samuel A. Wilson, E. M. Dudley, Benjamin F. Jackson and James H. Renick their costs in this Court expended; and this cause must be remanded to the circuit court of Pocahontas with instructions to put all parties *in statu quo* by requiring all persons, who have received any of the purchase-money of said lands to refund the same with interest and by refunding to the purchasers any money, which they may have paid on their purchases with interest from the time, when it was paid, and allowing them compensation for all permanent improvements put upon the land bought and by requiring them to pay for the rents and profits of said lands from June 9, 1869, and by doing all other things necessary and proper to put all persons *in statu quo* and, if necessary, to modify or change the above suggestions

as to the mode of so doing in any way, which under the actual circumstances of the case may be found necessary; and the court shall otherwise proceed with this cause according to the principles laid down in this opinion and further according to the principles governing courts of equity.

REVERSED.    REMANDED.