# CHARLESTOWN.

## PAPPENHEIMER *v.* ROBERTS.

### Submitted January 21, 1884—Decided October 1, 1884.

1. If a suit be brought by a judgment-creditor to sell the lands of his debtor for the payment of his judgment, and it appears on the face of the bill that other creditors have unsatisfied judgments against said debtor duly recorded on the judgment-lien docket in the county wherein the said lands are situated, such other creditors are necessary parties to such a suit. (p. 708.)

2. If in such suit the plaintiff seeks to set aside as fraudulent and void certain deeds alleged to have been made by the judgment-debtor with intent to hinder, delay and defraud the plaintiff in the collection of his debt, in order to charge the lands thereby conveyed with the payment of his judgment, such alleged fraudulent alienees are necessary parties to such suit, although they may have conveyed the said lands granted them, respectively, to other persons who are defendants in the suit. (p. 709.)

3. If the want of such proper parties appears on the face of the bill, it will for that cause be demurrable, and the defect may be taken advantage of by demurrer or at the hearing of the cause. But where the demurrer for such cause is sustained, the plaintiff should have leave to amend his bill. (p. 710.)

4. In such a cause the plaintiff should make formal parties to his suit, either as plaintiffs or defendants, all creditors who have obtained judgments in the courts of record in the county, in which are situated the lands of the debtor, which are sought to be subjected to the payment of the judgments, and also all creditors who have obtained judgments in courts of record or before justices in any part of the State, and have had them recorded in the judgment-lien docket of said county. *Neely* v. *Jones,* 16 W. Va. 625. (p. 708.)

5. If in such a suit all the judgment-creditors are not made parties, either formally or informally, and this fact is disclosed by the record, the Appellate Court will reverse any decree directing the sale of the lands or the distribution of the proceeds thereof. *Neeley* v. *Jones, supra.* (p. 708.)

6. In such a suit any judgment-creditor, who has not been made a party, formally or informally, having an unsatisfied judgment against such debtor, which was recovered before such suit was brought, may at any time before final decree file his petition in said cause setting up his judgment and praying to be made a party to such suit, and to have his rights under such judgment adjudicated, and if this right be denied him, it will be error for which the decree of the circuit court, denying such right, will be reversed.  (p. 712.)

7. If in a suit brought by a judgment-creditor to subject the lands of his debtor to the payment of his judgment, and the land has been sold under a decree in the cause, and the sale has been confirmed, and it appears that the necessary parties were not formally or informally before the court, the decree ordering the sale to be made, as well as the decree confirming the sale made in pursuance thereof, will be reversed and the sale set aside. (p. 712.)

WOODS, JUDGE, furnishes the following statement of the case:

In 1875, L. D. Pappenheimer & Co. filed their bill in the circuit court of Lincoln county against Henry Roberts and his wife Catharine Roberts, Thomas Roberts and his wife Emily Roberts, and John Wysong, alleging that on March 3, 1873, they recovered in the said court against said Henry Roberts and John Wysong, as partners, under the firm of Roberts & Wysong, a judgment for one hundred and sixty-three dollars and sixty-eight cents, with interest from that day and nine dollars and five cents costs, and that an abstract thereof was recorded on the judgment-lien docket of said county on July 14, 1875, which still remains unsatisfied; that M. E. Reeves & Co., Duncan, Ford & Elder, and John Wyne & Co. also recovered judgments against Roberts & Wysong, which were in like manner recorded in the judgment-lien docket of Lincoln county, all of which remain unpaid; that the debts on which these judgments were recovered were contracted between 1866 and 1869, and that at that time said Henry Roberts was the owner of several tracts of land in said county, one of which contained one hundred and seventy-three acres, another one hundred acres, another one hundred and sixteen acres, and another twenty-five acres; that on December 22, 1869, said Roberts conveyed to said Emily Roberts the three tracts of

one hundred, one hundred and sixteen, and twenty-five acres; and on December 29, 1869, he conveyed said one hundred and seventy-three acre tract to one Cornelius Loyd, who on May 5, 1874, conveyed the same tract to said Catharine Roberts, the wife of said Henry Roberts, for the nominal consideration of one dollar; that all of said deeds were executed without valuable consideration, in fraud of plaintiffs' rights with intent to hinder, delay and defraud the plaintiffs in the collection of their said debt, and the other creditors of Roberts & Wysong, and therefore void as to them; that Emily Roberts was the sister-in-law of the said Henry Roberts, the wife of his brother Thomas Roberts, who was secretly interested in the business of said partnership, and had an interest in the lands conveyed as aforesaid; and prayed that the said deeds as to them might be decreed to be fraudulent and void, and that the said lands or so much as might be necessary might be sold to pay the plaintiffs' judgment and for general relief.

The defendants Thomas and Emily Roberts answered the bill, not denying any of its allegations, except that they, or any of the lands conveyed to Emily were liable for the plaintiffs' demand, and alleging that the conveyance of said lands to her, were for a full and valuable consideration as set forth in the deed, made part of the bill, wherein the consideration appeared to be one thousand five hundred dollars, and also claimed that considerable amounts had been paid upon the judgments mentioned in the bill, to which answer the plaintiffs replied generally. At the April term, 1877, the cause was heard, and the court referred the cause to a commissioner, "to take, state and report to the court an account showing the several judgments and liens and the nature thereof against the firm of Roberts & Wysong or either of them; the priorities of the same if any; at what time the debts upon such judgments were contracted; what lands if any were owned by said Henry Roberts and John Wysong at the time when said judgments were in force; whether any, and if any, what was the consideration for said deeds to Emily Roberts, Cornelius Loyd and Catharine Roberts, and whether said conveyances or either of them were made to hinder, delay or defraud creditors." Before acting

the commissioner was required to give reasonable notice to the parties, of the time and place of performing his duties under said decree. No order or decree of the court was ever entered requiring or directing the commissioner to call before him by publication the judgment-creditors of the defendants Henry Roberts and John Wysong, none of whom except the plaintiffs were parties to the suit. The commissioner on September 17, 1877, returned his report, showing judgments against Roberts and Wysong, with accrued interest and costs to April 8, 1878, as follows: One in favor of said M. E. Reeves & Co. of eight hundred and sixty-one dollars and ninety-eight cents; one in favor of Duncan, Ford & Elder of five hundred and seventy-six dollars and sixty-one cents; one in favor of John Wyne & Co. of one thousand one hundred and seventy-six dollars and three cents, and one in favor of plaintiffs of two hundred and twenty-two dollars and ninety-six cents; and showing the debts were contracted between 1866 and 1868; that a short time before said judgments were recovered, Henry Roberts owned the said lands conveyed to Emily Roberts, Catharine Roberts and Loyd; that all said deeds were made without valuable consideration; they were made with intent to hinder, delay and defraud the creditors of Roberts & Wysong. No exceptions were filed to this report. At the September term, 1877, two chancery causes, one of Duncan, Ford & Elder, and another of M. E. Reeves & Co. against Roberts & Wysong, were consolidated with that of the plaintiffs, but as no part of the record of either of them appears in the transcript, neither is there anything to show for what purpose they were brought, or what relief was sought, or whether any persons other than Roberts & Wysong were parties thereto. At this stage in these proceedings the defendants appeared and demurred to the plaintiffs' bill, upon which no action ever seems to have been taken. At the September term, 1878, the court heard these causes with another of John Wyne & Co. against Thomas Roberts, &c., of which nothing appears in the transcript but the title of the cause, modifying the commissioner's report, changing the priority of the judgment of John Wyne & Co. over that of the plaintiffs. Under this decree, subsequently modified by

consent as to the order in which said parcels of land should be sold, the special commissioner sold all of said lands and returned his report, which was excepted to for want of proper parties to the suit and for other causes among which was the fact which appeared from other proceedings in the cause, that there were other large unsatisfied judgments against Thomas Roberts, alleged to be liens on the said lands conveyed to Emily Roberts, which were older than any of the judgments reported and decreed to be paid. After the said sales were made and before they were confirmed M. S. Thornburg, administrator of John Samuels, deceased, tendered to the court and offered to file his petition duly verified by his oath, setting forth that his intestate was a creditor by judgment of said Thomas Roberts, for about three hundred dollars; that his judgment, unsatisfied and in full force was older than any other of said judgments and was the oldest lien on said lands conveyed to Emily Roberts, and prayed to be made a party to the plaintiffs' suit, excepting to said report of sale for want of proper parties to the plaintiffs' bill, which petition was rejected, and not allowed to be filed. A similar petition was tendered by Cornelius Loyd and others, setting up the same facts and praying that Loyd be made a party to said suit, which last named petition was also rejected. At the April term, 1881, the cause was finally heard, and by the consent of the defendants Thomas Roberts, and of the adult heirs of said Emily Roberts, deceased, the circuit court confirmed the sales of all of said lands conveyed by said Henry Roberts to Loyd and by him to said Catharine Roberts. To these decrees, the defendants Henry Roberts, Cornelius Loyd and his wife Margaret Loyd, and M. S. Thornburg, administrator of John Samuels, deceased, obtained an appeal and *supersedeas* from this Court.

The appellants allege numerous errors in these proceedings, and principally among these, are: First, that the plaintiffs' bill was radically defective for want of proper parties: Second, in overruling the defendants' exceptions to the commissioner's report of sales of said lands and in confirming the same, for the reasons set forth in the petitions of M. S. Thornburg, administrator of John Samuels, deceased, and of Henry Roberts, Cornelius Loyd and others, and in refusing

to permit petitioners, Thornburg and Loyd to become parties
to the plaintiffs' bill.

*J. H. & J. F. Brown* and *M. Jackson* for appellants.

*Simms & Enslow* for appellees.

Woods, Judge:

The first question presented by this record is, what judg-
ment should the court have entered upon the defendants'
demurrer to the plaintiffs' bill? It does not appear that the
demurrer was formally acted upon or considered by the court.
It would seem as if the court had overlooked it altogether,
for in all its subsequent proceedings no notice of it was ever
taken. Under these circumstances we must hold that the
demurrer was overruled. No grounds for the demurrer are
stated, but it will appear at a glance that the real cause of
demurrer was the absence of proper parties. The object of
the plaintiffs was evidently to enforce the lien of their judg-
ment against the lands in the bill mentioned, as the lands of
Henry Roberts one of the judgment-debtors which they
allege had been fraudulently conveyed to the defendants,
Emily Roberts, Cornelius Loyd and Catherine Roberts. The
plaintiffs in order to show the fraudulent character of these
conveyances, not only allege that they were made without
valuable consideration, but that defendants, Roberts &
Wysong, had carried on a partnership business as merchants
from 1866 to 1869, and that during this period they had con-
tracted not only the debt for which their judgment was
recovered, but that they between these dates, contracted
other large debts, for the purchase of merchandise, which
remain unpaid; that among such creditors of Roberts &
Wysong, M. E. Reeves & Co., Duncan, Ford & Elder and
John Wynne & Co., had recovered judgments against them
which were docketed on the lien-docket of Lincoln county.
The dates when these several judgments were recovered as
well as the amounts thereof are not stated, neither are the
said judgment-creditors nor any of them made parties, plain-
tiff or defendant. Neither is the said bill filed by the
plaintiffs on their own behalf, and on behalf of all other

judgment-creditors, nor is there any allegation in the bill looking to a convention of the lien-creditors of said firm, or of either of the partners, and the prayer of the bill is that said deeds may be declared fraudulent as to the plaintiffs and that their debt be paid by a sale thereof.

Were these judgment-creditors of the firm of Roberts & Wysong, appearing on the face of the bill, necessary parties to the plaintiffs' suit?

It is a general rule in equity that all persons interested in the subject-matter involved in the suit, who are to be affected by the proceedings and result of the suit, should be made parties however numerous they may be, and if they are not made parties, and their interest appears upon the face of the bill, the defect may be taken advantage of either by demurrer or upon the hearing; and if it appears on the face of the record that the proper parties are wanting, the decree will be reversed by the appellate court unless the objection was waived in the court below. *Hill, &c.,* v. *Proctor, &c.,* 10 W. Va. 59; *Clark* v. *Long,* 4 Rand. 451; *Shepherd's Ex'or* v. *Starke, &c.,* 3 Munf. 29; Barton's Ch. Pr. § 34; Story's Eq. Pl. § 76.

This subject has frequently been before this Court, and it has decided that a creditor who brings his suit against a debtor to enforce the lien of his judgment against his debtor's land should sue on behalf of himself and all other judgment-creditors, excepting those made defendants, and he should make formal defendants in his suit all other creditors who have obtained judgments in the courts of record in the county in which the debtor owns lands which are sought to be subjected to the payment of the judgments, and also all creditors who have obtained judgments in any part of the State, which have been recorded in the judgment-lien docket of said county; and that if all the judgment-creditors are not made parties to such a suit either formally, or informally by being called by publication before a commissioner under a decree of the court to present their judgments, and this is disclosed in any manner by the record, the appellate court will reverse any decree ordering the sale of the lands, or the distribution of the proceeds of such sale. *Neely* v. *Jones,* 16 W. Va. 625; *Norris, Caldwell & Co.* v. *Bean,* 17 W. Va. 625.

It also appeared from the face of the deed made to Cornelius Loyd, dated December 29, 1869, which was made a part of the plaintiffs' bill, that said conveyance purports to have been executed in consideration of four thousand dollars, of which one thousand dollars was to be paid on April 1, 1870, and three thousand dollars on December 29, 1870, with interest from the date of the deed to secure the payment whereof a vendor's lien was retained upon the one hundred and seventy-three acres thereby conveyed. The bill alleged that this conveyance to Loyd, as well as his deed to Catharine Roberts, conveying to her the same land on May 4, 1874, were made without valuable consideration and were therefore void as to plaintiffs' judgment, and the bill seeks the cancellation of these deeds as part of the relief sought. It was a matter of perfect indifference whether there was any consideration deemed valuable in law for the execution of the deed to Catharine Roberts, provided the deed from Henry Roberts to Loyd was made for a valuable consideration, and free from fraud. Loyd had bound himself to pay his vendor for this land four thousand dollars, for which he had executed his obligations, secured by a vendor's lien thereon; both the deed made to him as well as his deed to Catharine Roberts contained covenants of general warranty of title to the land thereby conveyed, and he was liable upon this warranty in case the land was lost to his grantee, by reason of any fraud on his part that rendered his title worthless in her hands, and being directly and materially interested in the subject-matter of this controversy, he was entitled to his day in court to resist the pretensions of the plaintiffs, and to defend his title to said one hundred and seventy-three acres of land; and he could not justly be deprived of this privilege because he had conveyed all his interest in the land to said Catharine Roberts, a fact which, as we have already shown, pre-eminently entitled him to make such defence. This question came before the court of appeals of Virginia in the case of *Hagan &c.* v. *Warden*, reported in 3 Gratt. 315. In that case the plaintiffs, Warden and others, claiming a tract of three thousand five hundred and thirty-three acres of land entered by S. on January 20, 1795, surveyed in 1798, and granted in 1799, filed their bill against Hagan & Co. to re-

peal a grant of one hundred thousand acres entered by N. on June 22, 1795, and granted to L. and D. his assignees by patent dated March 28, 1796, under whom the defendant claimed title upon the ground that the entry made, and the grant obtained for the one hundred thousand acres were fraudulently made and obtained with full knowledge of the prior entry of S. In this proceeding, neither the said N. L. nor D. nor any of their representatives were made parties, but the superior court, notwithstanding this fact, granted the relief prayed for by compelling the defendants to release to the plaintiffs all the title vested in them to the land in controversy. From this decree the defendants appealed, and the court sustained their appeal, upon the ground that such decree could not be entered in the absence of N., L. and D. or their representatives, because they were necessary parties, and for this cause reversed the decree, and remanded the cause with directions to amend the bill, and bring the said N., L. and D. or their representatives before the court by proper process.

In the case under consideration the individuals composing the firms of Duncan, Ford & Elder, M. E. Reeves & Co. and John Wynne & Co. were directly and materially interested in the lands sought to be sold to the full amounts of their several judgments, and they and the said Loyd were deeply interested in ascertaining the correct amounts and priorities of said several judgments, if such in fact existed and constituted valid liens on said lands, and being so interested in the subject-matter involved in the plaintiffs' bill, they were necessary parties thereto, and the defendants' demurrer ought to have been sustained for want of proper parties, and leave given the plaintiffs to amend their bill and bring such parties before the court by proper process or in some other manner prescribed by law.

But it is insisted in argument by counsel for the appellee, that although the various creditors mentioned in the bill are not made parties, yet as their judgments are set out, and the commissioner reports the same as liens on the lands which no one excepted to, these lienors are informally parties before the court because their judgments are reported. In this the counsel for the appellees are in error, for the bill does not

set out the amounts of said judgments, nor when, nor in what court they were recovered, nor do the plaintiffs in their bill file, or offer to file, or even refer to any evidence whereby the defendants or the court could ascertain the description of these judgments, nor was there any order or decree rendered in the cause directing the commissioner to convene before him by publication the creditors of the defendants, Roberts & Wysong, and requiring them to appear and furnish proof, of the validity, amount and priority of their several liens. On the contrary, no such opportunity was afforded them, for the order of reference entered in the cause only directed the commissioner "to give reasonable notice *to the parties*" (that is, to the parties to the suit) "of the time and place of executing the same." Now neither any of such judgment-creditors nor the said Loyd could have had any legal notice of these proceedings, nor did they have any right, under the proceedings in the cause, to contest or controvert any of the matters set forth in the bill. Loyd was especially interested in resisting the demands of these judgment-creditors, and in having all the lands owned by John Wysong, as well as by Henry Roberts and Thomas Roberts, ascertained, and in having the lands liable to be first sold, so marshaled and sold as, if possible, to leave the one hundred and seventy-three acres conveyed to him relieved from the liens of the said judgments, if any such existed thereon. It was not competent for the plaintiffs and the said judgment-creditors, who were not parties, and the said Thomas Roberts and the heirs of said Emily Roberts, deceased, even if they had all been of full age, to consent to a sale of the said lands conveyed to Emily Roberts, which might materially affect the liability of said Loyd, who was no party to the suit. The injustice of this whole proceeding becomes more apparent when it appears by the record that both of them by proper petitions tendered and offered to be filed, setting up other liens on said lands of Emily Roberts, older than any of those reported by said commissioner, and praying to be made defendants, and to be permitted to defend their rights, and when both of said petitions, as well as their applications to be made parties to the suit, were, upon objections made thereto by the plaintiffs and said judgment-creditors, rejected

and disallowed. In rejecting these petitions and in refusing to permit said Loyd and M. S. Thornburg, administrator of John Samuels, deceased, to become parties to the suit the court erred to their prejudice. *Marling* v. *Robrecht, &c.*, 17 W. Va. 440. The report of sales made by the special commissioner was excepted to by all the defendants, and the appellants, Loyd and Thornburg, in said petitions so improperly rejected, excepted to said report of sale, on the especial grounds that the sales ought not to be confirmed because the proper parties were not before the court. While section 8 of chapter 132 of the Code provides, that "if a sale of property be made under a decree or order of court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled," yet it has been decided by this Court that it must be understood that such a sale is in a case where the parties interested in the property are before the court, and the decree of sale, and the sale itself, and the confirmation of the sale, are free from fraud. *Capehart* v. *Dowery,* 10 W. Va. 130. The same was held in *Underwood* v. *Pack*, 23 W. Va. 794, wherein Johnson, President, delivering the opinion of this Court, said: that in such a case "a purchaser could get no title, and would not be protected by section 8 of chapter 132 of the Code if the owner of the property was not before the court. It is clear that the purchaser would not be protected under said section, if parties shown by the record of the suit to be interested in the property by having liens thereon were not before the court. If the necessary parties were not formally or informally before the court, the purchaser would not be protected in his purchase under that section of said chapter." The exceptions of defendants, and especially those of Loyd and Thornburg, administrator, &c., to the report of the commissioner for want of proper parties were well taken and ought to have been sustained and the court erred in overruling the same and in confirming said sales.

For the reasons hereinbefore stated the decrees of the circuit court of Lincoln county entered in this cause at the April term, 1877, and the report of Commissioner Curry

made thereon, the decree entered at the September term, 1878, directing the sale of said lands, as well as the decree modifying the same, entered on the 15th day of April, 1880, and the final decree entered at the April term, 1881, of said court, must be set aside, reversed and annulled with costs against the appellees in favor of the appellants, except as to Margaret Loyd, the wife of Cornelius Loyd, as to whom the appeal is dismissed, the same having been improvidently allowed as to her.

And this Court proceeding to render such decree as the said circuit court should have rendered, it is adjudged, ordered and decreed that the defendants' said demurrer to the plaintiffs' bill be sustained; that the said exceptions to the special commissioner's report of sales be also sustained, and that the sales be wholly set aside, and that the plaintiffs have leave to amend their bill by making proper parties thereto, and otherwise if they see proper to do so; and this cause is remanded to the circuit court of Lincoln county for further proceeding there to be had therein according to the principles laid down in this opinion, and further according to the rules governing courts of equity.

REVERSED.   REMANDED.