## CHARLESTON.

CALVERT v. ASH *et al.*

Submitted January 13, 1900.—Decided March 24, 1900.

1. PARTIES—*Judgment Lien—Bill—Review.*
      Where a suit in equity is brought by a party to enforce his
      judgment lein against real estate which his debtor holds
      jointly with another, and both of the owners of said real
      estate are made parties to the suit, and served with process,
      although no allegation is made or lien asserted against the
      party holding said real estate jointly with such judgment
      debtor, and the cause being referred to a commissionner to
      ascertain the liens existing against said real estate, and their
      priorities, who reports a judgment lien existing against the
      real estate belonging to said party who is not the judgment
      debtor mentioned in the bill, it is error to decree a sale of
      the entire property, and such decree may be set aside by
      bill of review filed in proper time. (p. 487).

2.—PURCHASER—*Caveat Emptor.*
      *Caveat emptor* applies to a purchaser at a judicial sale. (p. 486).

3. PURCHASER—*Necessary Parties.*

 A purchaser at a judicial sale is not protected by section 8 of chapter 132 of the Code when the record of the suit shows that necessary parties interested in the property sold, having liens thereon, were not before the court when said sale was ordered and confirmed. (pp. 485-486).

4. DECREE—*Sale.*

 A decree rendered in the circumstances of this case is an entirety, and the entire decree and sale made thereunder will be set aside. (pp. 486-487).

Appeal from Circuit Court, Cabell County.

Bill by M. A. Calvert against Harrison Ash and others. Decree for plaintiff, and John B. Coleman appeals.

*Affirmed.*

PAYNE & PAYNE, for appellant.

A. C. BLAIR and J. W. KENNEDY, for appellees.

ENGLISH, JUDGE:

Harrison Ash and George Bond were joint owners of certain real estate in Kanawha County.. On the 15th of January, 1897, M. A. Calvert obtained a judgment against said Ash before a justice of the peace of said county for forty-seven dollars and twenty cents, with interest from that date, and costs, upon which judgment execution was issued, and returned "No property found." On the 2d of April, 1896, said Ash and Bond executed a deed of trust upon said real estate to secure to McNabb & Co., certain notes described in said deed of trust, which was duly recorded. M. A. Calvert filed a bill in equity in the Kanawha circuit court at May rules, 1897, making said Ash, Bond, Sylvester Chapman, trustee, Alexander McNabb, and B. H. Early, of McNabb & Co., parties defendant, setting forth the facts in reference to obtaining said judgment, issuing execution, and the return of "No property;" also as to the execution of said deed of trust, but alleging that the amounts secured by said deed of trust were fictitious and untrue; that said Ash and Bond never owed McNabb & Co. the amount of said notes, or any considerable part thereof; and that said deed of trust was made to delay, hinder, and defraud the creditors of said Ash and Bond,

and the creditors of each of them; that Ash and Bond were insolvent, and said trust deed operated as a preference to McNabb & Co.; that any amount Ash and Bond may have owed McNabb & Co,. if anything, at the date of said deed of trust, had long since been paid; that said judgment was a lien upon the real estate of said Harrison Ash, and that the rents, issues, and profits thereof would not pay off the lien, costs, and taxes thereon within five years; and prayed that said deed of trust executed by Ash and Bond to Sylvester Chapman, trustee, might be set aside, and held for naught, so far as it affected the debt of plaintiff, and that said real estate of Harrison Ash might be sold to satisfy the plaintiff's judgment. The cause was referred to a commissioner to ascertain and report the real estate owned by the defendant, Harrison Ash, the liens against the same, and the amounts and priorities thereof, and whether the rents, issues, and profits of said real estate would discharge the liens against the same within five years. In pursuance of this decree the commissioner reported the liens existing, and their priorities, and that the rents, issues, and profits arising from said estate would not pay off the liens thereof within five years, mentioning. several. parties as holding liens against said real estate, who were not made parties to the suit; which report, being unexcepted to, was approved and confirmed. Among the liens reported was a judgment recovered by John W. Watson & Co. against Ash and Bond for five hundred and forty-four dollars and sixty-five cents, and costs, twenty dollars and eighty-six cents, which judgment the court decreed to be a first lien on the undivided one-half interest of the defendant Bond in said real estate, set aside said deed of trust so far as it affected the said judgment creditors, and directed unless said Ash and Bond, or some one for them, should pay off said debts against them within thirty days, that a special commissioner therein named should make sale of said real estate upon the terms and in the manner therein prescribed. In pursuance of this decree, said special commissioner sold for three hundred dollars said real estate to one John B. Coleman, who complied with the terms of sale. The sale was reported to the court, and confirmed, and a writ of possession was issued to place

said purchaser in possession of the property. On the 28th of March, 1899, said Ash, Bond, Sylvester Chapman, trustee, Alexander McNabb, and B. H. Early presented a bill of review against M. A. Calvert and others, alleging, among other things, that the only purposes and object of the original bill were to enforce the judgment of said Calvert against H. Ash, and to have declared void said trust deed in favor of McNabb & Co. as to the judgment of M. A. Calvert; that no claim was made in said original bill in favor of any one against the real estate of said Bond, the prayer of said original bill being to sell the real estate of said Ash in satisfaction of Calvert's judgment; and no relief was asked against said Bond in respect to his interest in said real estate, there being no prayer to sell his real estate in satisfaction of any claim; that said decree was, therefore, void so far as it decreed the sale of Bond's interest in said real estate, and no title passed to Coleman by reason of the decree and sale, or of the confirmation of said sale and commissioner's deed as to entitle him to possession of said real estate. The plaintiff also alleged that the commissioner has no authority or jurisdiction within the scope of the original bill to report the claim of Watson & Co. against Bond, or to report the same as a lien against his interest in the land, and decree a sale of it in satisfaction thereof; that proper parties were not before the court; that one member of the firm of McNabb & Co., viz., J. B. Chapman, was not made a party; that the original bill was taken for confessed, and that Bond knew nothing of said decree and sale of his interest in said real estate until the writ of possession went into the sheriff's hands; and the plaintiffs prayed that the decree confirming said report, and decreeing a sale of said real estate, and holding said deed of trust in favor of McNabb & Co. to be fraudulent, as well as the decree confirming said sale, be reversed and set aside, the sale thereunder be declared null and void, as well as the deed to Coleman, and that the sheriff of Kanawha county be restrained and enjoined from executing said writ of possession until the matters arising on said bill of review have been heard and determined. The defendants demurred to the bill of review, and Coleman filed his answer to the same, which answer the plaintiffs moved

to strike out, which was accordingly done, as insufficient in law, and the court decreed that the decree entered in the original cause on June 15, 1898, be set aside. and the sale made thereunder on the 1st of October, 1898, as well as the decree confirming the same, entered October 5th in said original cause, be set aside, vacated, and held for naught, and that the deed from W. D. Payne, special commissioner, to John B. Coleman, for said real estate, be cancelled, set aside, and held for naught, and the injunction awarded therein be perpetuated; and from this decree Coleman obtained this appeal.

The first error relied on is that the court erred in setting aside the decree of sale and the sale made thereunder to appellant. Did the court so err? There can be but one answer to this question. The original bill sought no relief against the real estate of the defendant Bond; no claim was asserted against it, and the court was not asked to subject it to any lien, or sell it for any purpose whatever. It is true, a trust lien recorded against the real estate of Ash and Bond was sought to be removed on the ground that the same was fraudulent, but it is apparent this was prayed for merely that the interest of Ash might be subjected to the plaintiff's lien after being freed from this fraudulent trust. No matter how carefully the defendant Bond had read the bill, he would have found nothing indicating a wish or intention to subject his land to sale. The prayer of the original bill was that the trust deed be set aside, so far as it interfered with the plaintiff's claim, and to subject the real estate of Ash—not that of Bond—to the payment of plaintiff's lien. From the commissioner's report in this cause it appears that E. Callahan has a judgment lien against Harrison Ash for ninety-two dollars and fourteen cents, which is the first lien on his real estate; that Coleman has a judgment for one hundred and eight dollars and forty-four cents, which constitutes the third lien on said real estate; that William Reynolds has a judgment for seventy dollars and eighty-five cents against Coleman and Ash, which is reported as the fourth lien on said land; that John W. Watson & Co. have a judgment against Ash and Bond for five hundred and forty-four dollars and sixty-five cents, with interest and costs, which is reported as the

first on the one-half interest of George Bond in said land. Now, it does not appear that said judgment creditors, E. Callahan, J. B. Coleman, or William Reynolds came in by petition, and asserted their liens, or asked in any manner to be parties to the suit, or that said lienors presented and proved their judgment liens. Section 7 of chapter 139 of the Code provides that "every such lien holder, whether he be named as a party to the suit or not, or whether he be served with process therein or not, may present, prove and have allowed any claim he may have against the judgment debtor which is a lien on such real estate or any part thereof, and from and after the time he presents any such claim he shall be deemed a party plaintiff in such suit." My interpretation of this statute is that he must present and prove his claim, which is ordinarily done by petition. How the commissioner ascertained these liens does not appear. It may have been done by reference to the record, but there is nothing to show that the lienors presented them to the commissioner in any manner; and the statute does not intend that the act of the commissioner in searching the record and thus reporting the liens shall make the lienors parties to the suit. The statute says "parties plaintiff," and so they would be if they filed petitions, presented their claims, and prayed that they be given their proper priority as lienors; and, for aught that appears in this case, these judgments may be entitled to credits. Neither of these lienors can be considered in any sense as parties plaintiff to this suit. The other members of the Court do not agree with me upon this proposition, but this fact does not change the result, as J. B. Chapman, one of the firm of McNabb & Co., was not made a party, which firm held a lien on said property. In the case of *Underwood's Ex'r* v. *Pack*, 23 W. Va. 704, it was held that "a purchaser at a judicial sale is not protected by section 8 of chapter 132 of the Code, when the record of the suit shows that necessary parties interested in the property sold, having liens thereon, were not before the court when said sale was ordered." See, also, *Newcomb* v. *Brooks*, 16 W. Va. 66, 67. In *Pappenheimer* v. *Roberts*, 24 W. Va. 712, WOODS J., delivering the opinion of the Court, said: "It is clear that the purchaser would not be protected under

said section if parties shown by the record of the suit to be interested in the property by having liens thereon were not before the court." See, also, *Hull* v. *Hull's Heirs*, 26 W. Va. 30, and the authorities there cited. Applying the principles announced in the authorities above quoted and referred to, we are led to the conclusion that the purchaser, John B. Coleman, is not protected by section 8 of chapter 132 of the Code; neither can he complain if the decree under which he became a purchaser conferred no title on him. 2 Bart. Ch. Prac. 1190, § 347, says: "The rule *caveat emptor* applies in all its rigor to judicial sales, and, in the absence of mistake or fraud, the consequence of which we have considered, the buyer must look out for himself. He buys at his own risk, both as to title and quality. As we have seen, his bid at the commissioner's sale is a mere offer; and although, after confirmation, his title relates back to the day of sale, yet he has until confirmation to examine into the title, and to inquire if there be any defects in the proceeding." In *Bank* v. *Hyer* (decided March, 1899) 32 S. E. 1000, this Court held that a purchaser under a decree is held to know its contents, and what property or estate he is to acquire. See, also, *Hoback* v. *Miller*, 44 W. Va. 635, (29 S. E. 1014), and *Williamson* v. *Jones*, 43 W. Va. 563, (27 S. E. 411), 38 L. R. A. 694. In the case at bar it seems that process was served on Bond, and he was made a party to the suit, although no lien was asserted in the bill against his land, and no sale thereof was prayed for. In these circumstances the decree directing the sale of his land was an erroneous one. While the court had jurisdiction of Bond by service of process, the bill asked for no relief against the land, and the court, in the absence of any allegation showing any lien or liability against Bond's estate, or any prayer for its sale, clearly erred in directing the sale of said realty. The decree was a joint one against the land of Ash and Bond, and the sale under it a sale of the entire property. The case of *Gray* v. *Stuart*, 33 Grat. 351, draws a distinction between an erroneous judgment and a void one. The first is there held to be a valid judgment until reversed, provided it is the judgment of a court of competent jurisdiction. The latter is no judgment at all; it is a mere nullity.

The first cannot be assailed in any court but an appellate court. The latter may be assailed in any court anywhere, whenever any claim is made or right asserted under it. The decree directing the sale of this real estate must be regarded as an entirety, although it was an erroneous decree. The appellant became the purchaser, not of a part, but of the entire property sold under the decree. I am, therefore, of opinion, that the circuit court committed no error in striking out the answer of appellant to the bill of review, or in setting aside the entire decree rendered in the original cause on the 15th of June, 1898, directing the sale of said real estate, the sale made thereunder on the 1st of October, 1898, and the decree entered on the 5th of October, 1898, confirming the same, or in canceling the deed of conveyance made to appellant by said special commissioner. The decree is affirmed. But nothing herein contained is to preclude the purchaser, John B. Coleman, from applying to the circuit court of Kanawha County for restitution of the purchase money paid by him.

*Affirmed.*