# CHARLESTON.

BENT *et al.* v. READ *et al.*

Submitted September 24, 1918.   Decided October 8, 1918.

1.   LIMITATION OF ACTIONS—*New Action—Statute.*

Where one judgment creditor with a judgment against one only of two or more judgment debtors, makes parties to his suit to sell the lands of his judgment debtor such other judgment debtors, and some or all of the creditors having judgments against such judgment debtors jointly, but for want of pleadings, or sufficient pleadings against such other judgment debtors, the bill is finally dismissed as against them and their lands, but reserving to such creditors all rights, such other creditors having acted in good faith will in a second suit brought by them. within one year after the dismissal of the first suit, be protected from the plea of the statute of limitations by section 19 of chapter 104 of the Code, where as in this case it appears that the court and the parties to the suit, including intervening creditors, through years of litigation, and by several orders of reference and reports of commissioners, and exceptions thereto by the parties to the cause, and up until final report and decree thereon, have treated the cause as one pros- ecuted for and on behalf of all creditors against all such judg- ment debtors.   (p. 681).

2.   SAME—*New Suit—Statute.*

But such former suit and decree and the provision of said sec- tion 19 of chapter 104 of the Code will not protect against the bar of the statute of limitations, judgment or other creditors not made parties to such former suit, or who fail to appear and prove and have their judgment or other liens allowed by the commissioner against such other judgment or other lien debtors.   (p. 681).

3.   SAME—*Temporary   Absence—Service   on   Wife—Suspension   of Statute.*

When there is no estrangement between husband and wife, and they are not living separately and apart, and he continues to re- side and maintain a fixed and permanent residence and place of habitation in this state, where personal service of process, or its equivalent, may be lawfully had upon her, her temporary absence to nurse and care for a sick or disabled son located in another state or territory will not interrupt the running of the statute of limitations of a suit by a judgment creditor to sell for her debts her lands located in this state.   (p. 690).

4.  COVENANTS—*Construction—Obligation of Grantee—Judgments on Liens.*

    A deed absolute in form by husband and wife, judgment debtors and defendants in such suits, to their attorney of record, pending such original suit, and made with reference thereto, providing among other things that, "it is understood and agreed that the grantee is to assume and settle the valid liens on said land as set out and decreed for against the same, and the interest and cost, except that if any appeal shall be taken in said cause, and any debt or debts rejected, that has heretofore been held to be a lien upon said land, then the grantee is to pay said debt," if valid for any purpose, does not by its terms cover judgments or liens not decreed in such suit, nor those of creditors who failed to appear and prove their liens therein.  (p. 690).

Appeal from Circuit Court, Randolph Count.

Suit by James A. Bent and others against Nora S. Read and others. Decree for defendants, and plaintiffs appeal. *Affirmed in part. Reversed in part. Remanded.*

*James A. Bent* and *S. T. Spears,* for appellants.
*Arnold & Arnold,* for appellees.

MILLER, JUDGE:

The two decrees appealed from, the first of February 25, 1916, the second of May 19, 1917, were pronounced in the three causes consolidated, styled Daniel Annan vs. Nora S. Read, et al; James A. Bent and W. H. Cobb vs. Nora S. Read, et al., and Nora S. Read and Emma Read vs. C. H. Scott, et al. The first two of said causes were suits by creditors of W. J. Read and Nora S. Read to enforce the alleged liens of their judgments against a tract of eighty acres of land which in the prior cause of Johnson Milling Company vs. William J. Read and others, as finally adjudicated on appeal to this court, was adjudged to be the sole and separate property of the said Nora S. Read. *Johnson Milling Co.* v. *Read,* 76 W. Va. 557.

The present appeal was awarded upon the petitions of James A. Bent, W. H. Cobb, D. Annan, assignee, B. T. Whetsell and R. C. Moore. The defenses interposed by Nora S. Read and Semmes Read were former adjudication, the statute of limitations, and innocent purchaser without notice

of appellants' alleged liens. The decree of May 19, 1917, upon the report of the commissioner to whom the causes had been previously referred, and numerous exceptions thereto by the parties, sustained the report in its first phase or theory that the statute of limitations had not been interrupted by the temporary absence from the state of Nora S. Read, and overruled it in its second phase or theory that if her absence was such as to suspend the running of the statute, the judgments of appellants constituted liens on said eighty acres in the order of priority reported, and finally the decree was that the several bills of appellants be and they were thereby dismissed at the costs of the several plaintiffs therein.

In support of their alleged liens against the eighty acres appellants relied on several theories: first, that by virtue of section 19, of chapter 104, of the Code, the original suit of *Johnson Milling Co.* v. *W. J. Read et al.*, being a judgment creditor's suit, dismissed by final decree therein as to the said eighty acres of Nora S. Read for want of any proper pleadings, and for want of jurisdiction as to her, saved the running of the statute of limitations, as to their judgments, some of which were but others thereof were not proven before the commissioners in that cause; and that their rights were fully protected by the provisions of the said final decree, ''reserving all rights of creditors to proceed against said Nora S. Read, or her lands for the satisfaction of any debts due them from her in any other proceedings;'' second, that as against said Nora S. Read, the statute of limitations was suspended during the period of her alleged departure and absence without the State, obstructing process against her, by virtue of section 18, of said chapter 104, of the Code; third, that by the deed of W. J. Read and Nora S. Read to the defendant C. H. Scott, of April 16, 1906, whereby they undertook to convey to him all their lands, pendente lite, a trust was therein created charging said lands with the payment of said liens, and whereby said Scott became bound by his covenants to pay all the liens that might be finally decreed against said lands; fourth, that Semmes Read was a pendente lite purchaser from said W. J. and Nora S. Read, by deed

of June 17, 1913, subject to the deed to said Scott, and while the suit of the *Johnson Milling Company* v. *Reed et al.* was still pending upon appeal in this court.

On the first proposition, it is conceded that appellants instituted their present suits or proceedings within one year after the abatement or dismissal of said eighty acres out of the original suit of Johnson Milling Company, the time prescribed by said section 19, of chapter 104, of the Code. The answer of the appellees, however, is that there is no identity of cause of action or of parties in the two suits; that the latter was a suit by judgment creditors of W. J. Read alone, and though Nora S. Read was made a party by process, the bill contained no allegations, nor prayed for any relief against her, and that this question of her status in that suit was finally adjudicated by the final decree therein affirmed here as to that question upon appeal prosecuted by the plaintiffs therein.

We did hold in that case that for want of allegations and prayer for relief against her, Nora S. Read though a nominal party, and not liable on the judgment against W. J. Read, was not a party to that suit for purposes of any relief against her in favor of plaintiffs. But as she did appear by answer, and set up equitable rights against her husband, and certain joint creditors in a deed of trust impleaded in the bill, and in which trust she had joined, and which rights called for adjudication, and were adjudicated, the decree must be given such construction we think, as to limit its effect to the nominal plaintiffs in the bill. She was certainly a party to the suit and decree so far as her rights were adjudicated. She claimed all the lands proceeded against, some by deed from her husband, executed prior to the suit, and the remainder by deed made pending the suit; she alleged that some judgments against her and her husband had already been reported by the commissioner, and that others would be reported, and her prayer was that her interests might be protected and that in case a decree should be rendered for a sale of any of said property for the satisfaction of any of said judgments, it might be expressly provided that no part of the eighty acres of land should be sold until all the other

real estate theretofore standing in the name of the said W. J. Read had been sold and found insufficient to satisfy the same.

The proposition that in order that there may be a binding decree in such cases there must be pleadings as well as proof, and that without pleadings presenting an issue there can be no valid or binding decree, is well settled. *Woods* v. *Douglass,* 52 W. Va. 517; *Preston* v. *West,* 55 W. Va. 391; *Calvert* v. *Ash,* 47 W. Va. 480. In the first of the cases cited this principle was applied to facts somewhat similar to those in the case at bar, but differing in a material aspect, which we think takes this case out of the general rule. As already observed Mrs. Read was properly impleaded with respect to the deed of trust involved; she filed her answer on which relief was awarded her, as well as against her. But the most distinguishing fact in this case is that the court and all parties to the original cause up until the final decree therein treated the same as a general creditors suit against both W. J. Read and Nora S. Read. The Randolph National Bank and O. J. King having judgments against both defendants, intervened by separate petitions, setting up their judgments, and praying to be made parties thereto, and praying to have their judgments adjudicated as liens, which had been theretofore reported by the commissioner, and for general relief. These petitions were somewhat informal, and no process was ever issued thereon, but they were filed on the same day and by the same order which filed the answer of Mrs. Read, in which she referred not only to the judgments against her and her husband, which had theretofore been filed and proven before the commissioner, but to others which would be filed and proven, and which we are disposed to think should probably have been considered appearances to the petitions of the intervening creditors. But whether so or not, by four several orders of reference to a commissioner executed in the cause, the commissioner was required to report the lands owned by both judgment debtors, and the liens, and the amounts and priorities thereof, to which several reports W. J. and Nora S. Read filed exceptions, but in none of which until the fourth and final report did she raise any question as to the pleadings or to the jurisdiction of the court for

want of sufficient pleadings against her to sell her land. In each of his several reports the commissioner, in accordance with the requirements of the several orders of reference, did report the lands of both judgment debtors, and the liens thereon.

That there might have been proper pleadings to give jurisdiction in accordance with the theories and purposes of the parties, we think there can be no doubt. While the judgment of the Johnson Milling Company was against W. J. Read only, the deed of trust covered the lands of both, and it was necessary to determine the amount and priority of that lien in order to adjudge the rights of the plaintiffs as against W. J. Read and those having judgments against both defendants jointly. Many of the judgment creditors, as noted by the commissioner, appeared and proved their liens, as shown by his fourth and final report.

Upon these facts and the status of the record in the original suit the question is presented whether the present suits of appellants, brought within one year after the dismissal of the former, are barred, or by the saving clause in the decree or the provisions of section 19, of chapter 104, are protected from the limitations of the statute. The statute is as follows: ''If any action commenced within due time, in the name of or against one or more plaintiffs or defendants, abate as to one of them by the return of no inhabitant, or by his or her death or marriage, or if, in an action commenced within due time, judgment (or other and further proceedings) for the plaintiffs should be arrested or reversed, on a ground which does not preclude a new action for the same cause, or if there be occasion to bring a new suit by reason of the said cause having been dismissed for want of security for costs, or by reason of any other cause, which could not be plead in bar of an action, of the loss or destruction of any of the papers or records in a former suit which was in due time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, dismissal or other cause, or after

such arrest or reversal of judgment, or such loss or destruction but not after.''

This statute is broader and has been given a broader construction than the statutes in other states. In *Lawrence* v. *Winifrede Coal Co.,* 48 W. Va. 139, it was decreed that a party voluntarily dismissing his suit, will not be protected by the statute. But in *Ketterman* v. *Railroad Company,* 48 W. Va. 66, the holding was that the plaintiff in a suit dismissed because of a defective summons was protected thereby. Distinguishing *Lawrence* v. *Winifrede Coal Co., supra,* Judge Brannon saying: ''The very object of the statute is to give further time for a second action where the first action is *for any cause* abortive, ineffectual for recovery. No matter what was the cause of the first action's failure, no matter how bad the writ, no matter whether you call it void or voidable, it is all sufficient to save the action. It is within the very reason of the statute, it is just the kind of a trouble for which the statute intended to save the second action.'' In *Tompkins* v. *Insurance Company,* 53 W. Va. 479, the question was whether the statute saved the second action where the first was brought in a federal court and then dismissed for want of jurisdiction, and it was decided that it did. In that case Judge Poffenbarger reviews our own and the decisions of other states, notes the breadth of our statute, that it is a highly remedial one, and its call according to the general rule for a liberal construction. Again in *Ryan* v. *Piney Coal & Coke Co.,* 69 W. Va. 692, the same rule is adhered to, the opinion saying: ''Our interpretation of the statute based upon its terms and general principal and object of statutes of its class, as defined by the courts and text-writers, makes its application depend largely upon the good faith and diligence of the party invoking it.''

That the appellees or their privies in estate acted in good faith in appearing and proving some of the judgments now claimed by them, there can be no question, for up until the fourth report of the commissioner, no question was made of the validity of the liens, or as to the scope of the suit. Though the Reads excepted to the other reports, no question was raised or hint given of defective pleadings or want of

jurisdiction. But counsel argue that the second suit is saved by the statute only where there is identity of parties and subject matter, which is conceded. The question is thus presented whether appellants, or their privies in estate, Bent, Cobb, Annan, and Moore, being assignees of some of said judgments, were parties to the original suit in which said judgments were so reported and adjudged to be valid and binding liens on all the land proceeded against the eighty acres claimed by and decreed to be the sole and separate estate of Mrs. Read, so as to let them in to prosecute their present suits.

We do not understand that the general proposition is controverted that under our statute, section 7, chapter 139, Code, and the decisions of this court, in relation thereto, that from the time of the entry of an order of reference in such, suit convening the creditors all creditors whether named in the bill or not become parties in the general sense that they may come in and prove their claims, and without other pleadings become for all purposes of the decree parties plaintiff, and that they may not after such suit brought begin and prosecute any other suit for the same purpose on penalty of being enjoined therefrom and compelled to come into the original suit and therein assert their rights. This proposition is affirmed in *Arnold* v. *Casner,* 22 W. Va. 444, and numerous other cases cited and digested in 3 Ency. Dig. Va. & W. Va. Reports 794. Such being the law as provided by statute and adjudged in the decisions cited, it follows that as to all the judgments claimed by appellants, which were proved by them, or their privies, in the suit of Johnson Milling Company, and decreed as liens, they must be regarded for the purposes of this suit as having been parties plaintiff in that suit for they could not have been defendants therein.

But the record discloses that some of the judgments asserted by appellants in this second or supplementary suit were not presented to or reported by the commissioner in either of his several reports in the former suit, nor decreed as liens on the lands of W. J. Read, as were their other judgments. The question thus is presented whether appellants were as to the judgments not proved and decreed in the for-

mer suit parties plaintiff therein protected by the statute?
We have concluded that they were not. Section 7, of chap-
ter 139. of the Code, referred to, would preclude them as to
all judgments not proved in the former suit. We refer espe-
cially to that provision thereof saying: "which decree shall
be a bar to the claim of any lien holder who has not appeared
and presented his claim to said commissioner, as required by
said notice, except that if a surplus remain after the pay-
ment of the claims so presented and proved, and confirmed
by the court, the lien holder so failing to appear may share
in such surplus, upon proving his claim at any time before a
final decree in the case, in such manner as the court shall
direct. But if he fail to present his claim before such final
decree, he shall be forever barred of all right to participate
in the proceeds of such real estate so far as the other creditors
of said judgment debtor, holding liens on his real estate, who
have not so failed, are concerned, and so far as the creditors
at large of such judgment debtor are concerned." We do
not think that any creditor who has not so appeared and
proven and had his lien adjudicated after such final decree
can be said to have been a party to such suit, and if finally
defeated by reversal or dismissal thereof for want of juris-
diction or of proper or sufficient pleading be protected in a
second suit begun thereafter and within the period of limita-
tions prescribed by said section '19, of chapter 104. We do
not think that the most liberal construction accorded our
statute will admit one who has thus slept upon his rights.
Good faith and diligence of the party invoking the benefits
of the statute, we think is a necessary qualification in the
absence of which he must be denied the saving provision of
the statute respecting a second suit. *Ryan* v. *Piney Coal &
Coke Co., supra.* Nor do we think the saving clause in the
decree, whatsoever may be its effect upon creditors who did
prove and have their liens allowed and decreed, can have any
application to debts or liens not so proved and allowed in
the first cause. Our answer therefore is that as to all the
judgments presented and adjudicated in the former suit ap-
pellants were parties to the original suit, and that though
Mrs. Read was dismissed out of that suit as to the eighty

acres now proceeded against, for lack of pleadings and prayer
for relief against her, they are protected by the statute, and
that as that suit was begun before the statute of limitations
barred the judgment so proved, the limitation of the statute
constitutes no defense in the present suit, and that as to
those judgments unless it be as to the judgments of appellant,
Annan, who failed to except to the report of the commis-
sioner appointed herein.  The proposition is that as Annan
failed to except to the commissioner's report, he acquiesced
therein, and cannot now be heard to controvert the correct-
ness of the decree or report.  The report is silent as to
these judgments; there is no affirmative report for or
against them.   The  bill  alleges  plaintiff's  right  and
title thereto, non payment thereof, and referred to and
vouched  the  former  record  as  an  adjudication  in  his
favor.   The  validity  of  these  judgments  and  the  ma-
terial  facts  alleged  are  not  specifically  controverted  by
plea or answer.  The only defense set up or relied on is the
statute of limitations.  The decree of May 17, 1917, referring
to the written opinion filed, to the effect that all the judg-
ments set up by Annan in his suit were barred by the statute
of limitations prior to the institution of the suit, dismisses
the bill and denies him relief on that ground alone.  But as
we hold this second suit is protected by institution in time of
the first suit of creditors, it follows that the report and de-
cree denying Annan relief on the plea of the statute of limita-
tions is erroneous, and unless the decree can be affirmed
upon grounds other than those assigned and relied on it
must be reversed.  On the face of the record as now inter-
preted the Annan judgments constituted valid liens on the
eighty acres.  The record of the original cause as well as
the pleadings in the present suit must be regarded as having
been before the commissioner.  The causes consolidated were
all referred to him.  On these records we hold that Annan
was entitled to a decree.  The report of the commissioner
when taken in connection with the pleadings shows error
therein respecting these Annan judgments, and the error

so appearing may be corrected on appeal. *Shenandoah Valley National Bank* v. *Shirley,* 26 W. Va. 563.

These conclusions would render it unnecessary to further consider the remaining propositions relied on by appellant to reverse the decree were it not for the judgments now asserted as liens on the eighty acres which were not proven, allowed and decreed in the original cause. As we have decided that as to those judgments the appellants were not parties to the original suit and not protected by it against the bar of the statute of limitations, it remains to be considered, first, whether on the theory of the departure and residence out of the state of Mrs. Read the running of the statute was suspended. We have carefully considered the evidence on this question. The home or domicile of Mrs. Read was with her husband in Randolph county; her absence in Kentucky and Washington, D. C., proved and relied on by appellants, was in the first instance to visit her sons in Kentucky, and i nthe last instance to nurse and care for another son, a naval officer, severely injured in an accident. Her husband continued all the time to maintain the home in the City of Elkins, where undoubtedly substituted service could have been had upon Mrs. Read. The evidence is clear and thereon the court below found as a fact that there had been no departure or residence without the state obstructing process against her. The test, according to all the authorities cited and relied on is, was Mrs. Read's departure, however long continued, such as to abstruct personal process upon her? If it was not, if she and her husband were not estranged and living separately and apart, her temporary absence did not obstruct the prosecution by appellants of their suit for substituted service of process could have been had upon her at any time in the mode prescribed by statute. *Lemon* v. *Gold,* 72 W. Va. 619; *Batton* v. *Lowther,* 74 W. Va. 167. So we think the period of Mrs. Read's temporary absence should not be eliminated, and that the statute constitutes a complete bar after ten years to the present suit so far as it relates to the judgments not proved or allowed in the former suit.

The only other proposition relied upon by appellants is that the deed of April 16, 1916, from W. J. and Nora S. Read

to C. H. Scott, created a trust in their favor, and entitling them as persons in whose favor it was made to enforce the same in a court of equity. This deed was by the decree appealed from held to constitute a mortgage, not an absolute conveyance to Scott, to secure him for certain debts and obligations incurred to him. The provision therein relied on is: "And it is understood and agreed that the grantee is to assume and settle the valid liens on said land as set out and decreed for against the same, and the interest and costs, except that if any appeal shall be taken in said cause and any debt or debts rejected that has heretofore been held to be a lien upon the said land, then the grantee is to pay said debt."

Objection to the validity of this deed as an absolute conveyance or as a mortgage was made on the ground that Scott was at the time attorney for the Reads, and that it was absolutely void upon the principles enunciated in *Keenen* v. *Scott and Cobb,* 64 W. Va. 137. But we think we need not consider this question, for the judgments not proven and decreed in the original suit referred to are not within the terms of the covenant, and *quo ad* those judgments it was not a covenant to pay them enforceable by appellants.

Our conclusion, therefore, is that in so far as the decrees appealed from are not in accordance with the principles herein enunciated they should be reversed, otherwise affirmed, and that these causes should be remanded to the circuit court for reformation of the report of the commissioner in accordance herewith, and to be therein further prosecuted according to the rules and principles governing courts of equity.

*Affirmed in part.   Reversed in part.   Remanded.*